MARGARET PHELPS

*v.*

JACOB S. PHELPS.

1. WIDOW'S AWARD—*effect of ante-nuptial contract.* The special allowance made by statute for the widow of a deceased person is as much for the advantage of the children of the deceased as for his widow, and where there are such children residing with the widow, she has no power to release it, and it can not, in such case, be affected by an ante-nuptial contract.

2. An ante-nuptial contract provided that the property of the husband and wife should be kept separate, and held and enjoyed by each separately, in the same manner as if they had remained unmarried, and upon the death of either party, his or her real estate and personal property should pass to his or her heirs, executors and administrators, free from all claims of the survivor: *Held,* that the effect was to debar the wife of dower in her husband's real estate, and prevent her from taking any portion as heir under the statute, but that it did not deprive her of the right to the specific articles of property allowed by the statute in all cases for the benefit of the widow and family of a deceased person.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. WILDERMAN & HAMILL, for the plaintiff in error.

Mr. MARSHALL W. WEIR, for the defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The decision in this case depends upon the construction that shall be given to the ante-nuptial agreement between the petitioner and her late husband, Michael Phelps, deceased.

35—72D ILL.

Under our Statute of Wills, the widow, in all cases, is allowed certain specific articles of property for the benefit of herself and family, and the petitioner in this case would be entitled to the benefit of that provision unless her right is barred by the terms of that agreement. The clause which it is insisted bars the right is as follows: "It is agreed that the property of each shall be kept separate and distinct, held and enjoyed by each separately and distinctly, by each in the same manner as if they were and had continued unmarried; and, upon the death of either party, his or her real estate and personal property shall pass to his or her heirs, executors and administrators, free from all claims of survivor."

The decedent had children by a former marriage. It was provided that the issue of their marriage, if any, should inherit the estate of the husband equally with his other children. One child was born unto them, which was living with the widow at the time of filing this petition.

No doubt ante-nuptial agreements are to be construed liberally for the purposes which they were intended to accomplish. The obvious meaning of the agreement in the case at bar is, that it cuts off all the interest the widow would personally have by reason of her marriage, in the property of her husband, both real and personal, but further than that it does not go. It was certainly never contemplated it would debar the wife of the right of support at the hands of her husband during his lifetime, nor release him from his obligation to support their children, the fruits of their marriage, if there should be any. Neither party ever expected it to have such an effect. It was only intended to operate upon her interest in his property, but not to relinquish the means of support which it was his duty to furnish her and her family. That duty the law imposed upon him during life. Surely he was not released from his obligation in this regard, by anything contained in the ante-nuptial agreement.

The law also charges the husband's estate with the support of his widow and his children residing with her, for the period of one year after his death, at least to the extent of certain

articles of property, or their value in money. This latter right is one created by positive law, and attaches in all cases, whether there is sufficient property or not to pay the debts of the decedent. Being a statutory right, it is one of which the husband can not deprive his wife and children, no more than he can relieve himself of his obligation to support them while living. It is in no case affected by the widow renouncing or failing to renounce the benefit of the provisions made for her in the will of her husband, or otherwise. Our laws on this subject have always been liberal, but the tendency of more recent legislation is to enlarge, rather than abridge, the beneficent provisions in this regard. The same protection has been extended by statutory enactments to the minor children of the decedent, where he is a householder at the time of his death, and leaves no widow.

The right of the wife to support during marriage is not an interest, strictly speaking, in the property of her husband. It is a benefit arising out of the marital relation by implication of law. Treating the provision which the law makes for the widow and the children residing with her, by the allowance of specific articles of property, as a means of support, it can not be said to be an interest in the property itself of the husband. It comes within no definition of property. It is a benefit created in their favor by positive law, and adopted for reasons deemed wise and politic.

The ante-nuptial agreement in this case makes no allusion to these rights. Hence it can not be said that the petitioner has released her right to the benefits of the obligations imposed upon her husband and his estate which are to inure to her and her family in case of his death. Its effect would be, to debar her dower in the estate of her husband, and prevent her from taking any portion as heir under the statute; but it is an unreasonable construction to say that it deprives her of the provisions the law has made in her behalf and for her husband's minor children residing with her. The specific allowance is as much for the advantage of the children of the decedent as for his widow. It is an absurd conclusion that

any ante-nuptial agreement can deprive the children of the means of support, in their tender years, which the law has given. Should the construction contended for prevail, the debts of the decedent might exhaust the entire estate, and leave the family in utter destitution. As we said in *Strawn* v. *Strawn*, 53 Ill. 263, it was the design of the legislature to furnish the necessary sustenance for the household for one year after the death of the husband. We are at a loss to understand how this humane provision of law for the family of a deceased party can be affected by an ante-nuptial contract, however broad and comprehensive its terms.

The suggestion, the petitioner may have had separate property at the time of her marriage, can make no difference in the decision of the case. She was not bound to use it for the support of his children, to the exclusion of the estate of her husband; but if that question was material, we can not know the amount of the property, nor that any portion of it was preserved until the death of her husband. So far as anything appears in the record, the family may be entirely dependent on the estate. Independently of the question whether there is sufficient property to discharge the debts, the law has appropriated to the widow and the family residing with her such specific allowance as was deemed necessary for their support for one year, and made it a first charge upon the estate, to be first discharged to the extent there may be assets belonging to the deceased.

But there is another ground upon which the agreement may be held to be inoperative as to the widow's award. The statutory provision that exempts a portion of a man's estate from the payment of his debts, for the maintenance of his widow and minor children for a limited period, was adopted from motives of public concern. It is, that they may not become a charge upon the eleemosynary institutions of the State, as in many instances they would, but for this humane provision of the law. It is undeniable law that a party may waive the advantage of a statute intended for his sole benefit, but there are grave reasons why a law enacted from public considerations

should not be abrogated by mere private agreement. The statute we are considering is of this character. It was intended to throw around the persons named that protection they are unable, in their helplessness, to procure for themselves. This is not a matter of mere private concern. It would be in contravention of the policy of this enactment to permit a party, by an ante-nuptial contract, to relieve his estate altogether from the maintenance of his widow and his children, when they could no longer sustain themselves. The statute has made a temporary provision for them, inadequate as it may be in many instances, and we think every principle of justice and humanity, as well as due regard for the general welfare, require us to hold that a party may not, by private agreement, contract against the liability imposed. It would place upon the State or local municipality the obligation the law has fixed upon his estate.

In *Kneetle* v. *Newcomb*, 22 N. Y. 249, it was ruled that a contract made by the head of the family, waiving the benefit of statutory exemptions designed exclusively for the benefit of the family, was subversive of the policy of the enactment, and hence illegal and void. The decision, in part, is based upon the reasoning in *Woodward* v. *Murray*, 18 Johns. 400. See *Harper* v. *Leal*, 10 How. Pr. R. 282, upon the same point.

Motives of public interest cause the imposition of restraints or prohibitions as to the alienation of certain things, and even as to any dealings with them. The principle is, the citizen may not deal even with his own property in a manner detrimental to the general welfare or public safety. This is the doctrine of both the common and civil law. If the rule prevails as to articles of property, there is no just reason why it should not be maintained as to duties and obligations imposed by positive laws. The statute which sets apart certain specific articles of property, or their value in money, for the maintenance of the widow and family of the deceased, is in the nature of a charge upon the estate, dictated by the spirit of humanity and adopted in accordance with an enlightened public policy, and to permit a party to contract against its salutary pro-

visions, is simply to abrogate the law itself. This can not be done.

Were there no child or children of the decedent residing with the widow after his death, a very different question would be presented. The award would be for her sole use in such case, and might be treated as a personal right, which she could, if she chose, relinquish; but it is otherwise where there are children of the decedent constituting the family. The award is as much for their benefit as for hers, and she has no power to release it by an ante-nuptial agreement or otherwise. The policy of the law is, to provide a home for the family, that the domestic circle might remain unbroken during the period for which provision is made for them, notwithstanding the death of the husband. To effectuate that purpose, it is necessary that the widow should share in the benefit of the award.

For the reasons indicated, the judgment of the circuit court will be reversed, and the cause remanded with directions to affirm the judgment of the county court granting the prayer of the petition.

*Judgment reversed.*

Mr. Chief Justice Walker: I am unable to concur in the conclusion and the reasoning of the majority of the court in this case. It is apparent to my mind that the *ante-nuptial* contract cut off all claims of the widow to any interest in the property of the husband, without regard to whether it be dower, award or other claim.