ARTHUR C. WEAVER *et al.*

*v.*

ERNESTINE WEAVER.

*Filed at Ottawa November 20, 1883.*

1.  CONTRACT—*there must be mutuality.*   It is a rule of general application that a contract between parties *sui juris* must be mutual,—that is, if either is bound both will be bound.

2.  WIDOW'S AWARD—*of the widow's rights in respect thereto—power of disposal.*   After a widow's rights in respect to what is termed the "widow's award," have once accrued to her by the death of her husband, she may exchange the specific articles of property awarded to her by the statute, or she may release her right to them altogether, or dispose of it the same as of any other property of which she is the absolute owner.

3.  SAME—*waiver by ante-nuptial agreement, and acceptance under it.* A widow having a family consisting in part of the decedent's children, is entitled to her award out of the personal estate, notwithstanding there is an outstanding ante-nuptial executory contract by which she has agreed to accept a certain sum of money, or something else in lieu of it,—in other words, so long as such contract remains executory she may repudiate it.

4.  But where an ante-nuptial contract is fairly made and entered into, and the intended wife is not imposed on or overreached, whereby, in consideration of a certain sum of money directed to be paid to her on the husband's death, she releases and relinquishes all rights, interest or claims she might otherwise have had in his estate, either as heir, widow or otherwise, and after his decease, without any fraud or imposition, accepts and receives from the husband's executors such sum of money in lieu of all her claims upon the estate, this will bar any claim, under the statute, to a widow's award, and her right by such acceptance to repudiate the contract will no longer exist.   By

such acceptance the widow will be estopped from asserting any claim to such award; whether.there are any children of her husband remaining with her as a part of her family or not. What is said in *Phelps* v. *Phelps*, 72 Ill. 545, in regard to the power of the widow to dispose of her award, is not to be understood as opposed to the doctrine here laid down.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. WM. H. BARNUM, Judge, presiding.

Ernestine Weaver, widow of Daniel Weaver, lately of Chicago, deceased, on the 3d day of November, 1881, filed in the probate court of Cook county a petition, praying that her award as widow be set off and assigned to her out of his estate. The probate court refused to allow the petition, and entered an order dismissing the same, from which order she appealed to the circuit court, where the matter was heard *de novo,* resulting in an order allowing the petition, which, on appeal by Weaver's executors, (the appellants here,) was affirmed by the Appellate Court for the First District, and the executors bring the case here for review.

The petition alleges that the petitioner "is the widow of Daniel Weaver, deceased; that she formerly lived in New Orleans, Louisiana; that Daniel Weaver resided in Chicago, Illinois, in 1877, having also formerly resided in the State of Louisiana for some time, and been engaged in business there; that he was familiar with the laws of Louisiana; that being about to marry, he and the petitioner entered into a certain agreement prior thereto, at New Orleans, as per copy attached to petition, and made part thereof; that said marriage was duly had on June 2, 1877, and petitioner removed with her said husband to Illinois at once, and there resided until his death, on July 24, 1881; that at the time of said marriage petitioner had one female child by a former marriage, then about eight years of age, who then lived, and still lives, with petitioner, and that petitioner had no property of her own; that Daniel Weaver died seized of a large property, situate

mostly in said county of Cook, and leaving a will, now duly probated in said probate court, to which reference is had; that said deceased left him surviving petitioner, (his widow,) John Weaver, Arthur Weaver, and Mrs. Ella Lewis, his adult children by a former marriage, who are made executors; that she was recently for the first time informed of the statutory provision of Illinois for widow's awards; that Louisiana has no such provision, and that she executed said antenuptial contract in ignorance of such a provision, and did not intend to waive her rights thereto by said marriage contract; she therefore prays for appointment of appraisers to set off her award."

The ante-nuptial agreement, dated June 1, 1877, between Daniel Weaver and petitioner, sets out the intended marriage of the parties; that said Weaver is possessed of considerable property, and is desirous of making some fit and suitable provision for the support and maintenance of petitioner, after his death, in case he does not survive her, and then proceeds as follows: "Now, therefore, in consideration of the premises, and of one dollar in hand paid by the said party of the second part, (Ernestine Weaver,) to him, the said party of the first part, (Daniel Weaver,) the receipt whereof is hereby acknowledged, and in consideration of the covenants and agreements of said party of the second part, hereinafter set forth and contained, the said party of the first part, for himself, his heirs and personal representatives, hereby covenants, bargains and agrees to and with the said party of the second part, her heirs and personal representatives, that in the event of his death, leaving her, the said Ernestine Hill, (now Weaver,) him surviving, as his widow, there shall be paid to her out of his estate, to be in lieu of all her claims, whether as his widow, heir, or otherwise, of whatsoever name or kind, and in lieu of her dower or widow's portion of, in or to his estate, real, personal or mixed, and in full and absolute discharge of any and all such claim, right or interest of, in and

to his said estate, the sum of twelve thousand (12,000) dollars, to be paid to her by his executors or administrators, at the time and in the manner following, namely: $2000 to be paid to her within ten days after the executors or administrators shall be qualified to act as such, and the balance of said sum, (*i. e.*, $10,000,) in two equal installments, of $5000 each, to be paid, respectively, in three and six months from and after their being so qualified, and the receipts thereof shall be sufficient vouchers to his said executors or administrators for such disbursements. ·And the said party of the second part, for herself, her heirs, executors and administrators, doth covenant and agree to and with the said party of the first part, his heirs and personal representatives, that in consideration of the covenants and agreements aforesaid of the said party of the first part, and of the provision thereby made for her use and benefit, she will, and for the consideration aforesaid she does, hereby forever relinquish, release and discharge all claim, right or interest, of every name, kind or nature, whether present, in expectancy, or otherwise, whether for dower or as his heir, in the estate of the said party of the first ·part, whether possessed or owned by him at the time of their marriage, or acquired by him subsequent thereto, and that she will receive and accept the aforesaid sum or sums of money in lieu of, and in full satisfaction and discharge of, any and all such claims, rights or interests in the said estate of the said party of the first part, and that she will, at any and all times after their said marriage, upon the request of the said party of the first part, duly execute and acknowledge any and all such deeds of conveyance, mortgages, trust deeds, releases, acquittances, or other instruments in writing as may be necessary and proper for the conveying, releasing, satisfying or discharging any and all her interest, right, title or claim, whether as owner, heir, or otherwise, of, in and to the estate, real, personal or mixed, of the said party of the first part, whenever and however the

same may be situated.   The true intent, object and meaning of these presents is to settle upon the said party of the second part a sum in gross, being the sum herein first above mentioned, to stand and to be, in substance, for and in lieu of all claims to or interest in the estate of said party of the first part which said party of the second part would or might have in case this agreement, and the covenants herein contained, were not made or entered into."

This agreement was duly signed and sealed by the parties, and formally acknowledged by them on the same day, in the city of New Orleans, Louisiana, where it was executed. The answer to the petition admits the material facts therein charged; shows that Weaver had two other children by a former marriage, not named in the petition; that he had no children by petitioner, and that all the children by his former wife were adults, and that but one of them constituted a part of his family at the time of his death, and denies he was familiar with the laws of Louisiana.

For the purposes of the hearing, and the decision to be rendered in this case, it was stipulated as follows:   First, that all the conditions of said ante-nuptial contract have been fully performed by said executors; second, that there were no children born of the marriage between said Daniel Weaver and said petitioner; third, that the children of said Daniel Weaver by his former marriage were all of age prior to his decease, and only one of them, (*i. e.*, the said Arthur C. Weaver,) resided with him at the time of his decease; and fourth, that Zemma Hill, the female child referred to in said petition, is a daughter of petitioner, aged as stated in the petition, and resided with Daniel Weaver from the time of petitioner's marriage with him, to his death.   Also, that petitioner, if examined as a witness in the case, would testify that at the time she signed said ante-nuptial agreement she was ignorant of the laws of Illinois in reference to widow's award,—this admission being made subject to all objections which

might be urged to the testimony of the petitioner if examined as a witness in the case; and also that the amount in controversy in this proceeding exceeds $1000, exclusive of costs.

Mr. C. C. KOHLSAAT, for the appellants:

The cases holding that a widow is not barred from her specific award by an ante-nuptial contract, are based upon the fact that the children of the deceased husband have rights in the same. *Strawn* v. *Strawn*, 53 Ill. 263; *Recht* v. *Kelly*, 82 id. 147; *McGee et al.* v. *McGee et al.* 91 id. 548; *McMahill* v. *McMahill*, 105 id. 596; *Phelps* v. *Phelps*, 72 id. 545; *Tiernan* v. *Binns*, 92 Pa. St. 248; *Dillinger's Appeal*, 11 Casey, 359; *Estate of Young*, 27 Hun, 54; *Brenner* v. *Gauch*, 85 Ill. 368.

From the foregoing authorities it seems plain that a widow's award may be waived by ante-nuptial contract, when there are no children of the marriage, or of the decedent, interested in having the award set off.

Mr. MELVILLE W. FULLER, for the appellee:

The widow's award can not be waived by an ante-nuptial agreement. Rev. Stat. chap. 3, secs. 70, 74, 75, 76.

The widow is a creditor of the estate to the extent of her separate allowance. *Cruce* v. *Cruce*, 21 Ill. 461; *Deltzer* v. *Schuester*, 37 id. 301.

On the death of the widow her specific allowance passes to her administrator. *York* v. *York*, 38 Ill. 522.

This is not a case of election as to taking under a will, or the statutory allowance, as in *Cowdrey* v. *Hitchcock*, 103 Ill. 272. The law having charged a decedent's estate with the support of his widow and his children for the period of one year, it is against the policy of the law to allow the widow's award to be waived or cut off by an ante-nuptial agreement. *Phelps* v. *Phelps*, 72 Ill. 545; *Kneetle* v. *Newcomb*, 22 N. Y. 249; *Harper* v. *Leal*, 10 How. Pr. 282; *Sanderlin* v. *Sander-*

*lin,* 1 Swan, 441; *Strawn* v. *Strawn,* 53 Ill. 274; *Heirs of Sawyer* v. *Sawyer,* 28 Vt. 245; *McGee* v. *McGee,* 91 id. 48.

If the agreement, when made, could not be construed to bar the widow's award, how can a compliance with it have that effect? Suppose the agreement had provided for payment in two years after the death, would the probate court have power to suspend the allowance of an award until such payment was made? But the agreement did not cover the widow's award. As to that she was a creditor of the estate. *Cruce* v. *Cruce,* 21 Ill. 461; *Deltzer* v. *Schuester,* 37 id. 301.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Viewed in the light of the preceding statement and the arguments of counsel, this case, so far as its legal aspects are concerned, is brought within a very narrow compass. Although it is conceded the petitioner, if examined as a witness, would swear that at the time of the execution of the ante-nuptial agreement she was not aware that a widow, under the laws of this State, was entitled to what is known as the "widow's award," yet, waiving the question of the competency of such testimony, it is to be noted the agreement itself, which she must be presumed to have understood, in the absence of any claim in the petition to the contrary, expressly provides the $12,000 was *"to be in lieu of all her claims, whether as his widow,* heir, or otherwise, of whatsoever nature *or kind, and in lieu of dower or widow's portion."* The expression, "widow's portion," in this connection, evidently means substantially the same thing as widow's award. So, conceding she did not know what the law of this State was in the respect mentioned, yet she did know that by the agreement she relinquished and waived all right and claim to such a provision out of her intended husband's estate, whether the laws of this State gave it to her or not, and in that view it is difficult to perceive what difference it makes whether she did

or did not know what the law was on that subject. There is no claim, or foundation for the claim, there was any unfairness or overreaching on the part of the deceased, or any one else, by which she was induced to enter into said agreement; and in view of the fact she had no estate whatever of her own, with an infant daughter to be maintained, and the further fact the deceased at that time must have been well up in years, we are unable to say the agreement was not fair, and even liberal, on his part. But in the absence of any claim of fraud or overreaching, this is a matter of little, if any, importance. The vital inquiry is: First, what was the intention of the parties with respect to such claims as appellee would, as heir, widow, or otherwise, have against his estate if no agreement were made between them? Did they intend, in the event she survived him, she should receive anything out of or from his estate in addition to or in excess of the $12,000, after its payment by his legal representatives, as in the agreement provided? Second, what is the legal effect of said agreement with respect to any such claims after the payment of that sum by the executors?

As to the intention of the parties we think there is no room for doubt. It would be difficult to conceive of terms more appropriate and effective to express a clear and unequivocal purpose and intention on the part of both the contracting parties, that the payment of the $12,000 to the widow by the decedent's legal representatives should operate as a complete discharge and satisfaction of all claims whatsoever, including the one in question, she would, as his widow, heir, or otherwise, have against his estate. From this conclusion the answer to the second inquiry follows as a matter of course, provided such an agreement is obligatory and enforcible under the laws of this State, and upon this question the decision of the case hinges.

As the question has been ably and fairly argued by counsel on both sides, we have been relieved of much labor which its

consideration would otherwise have cost us.   It will therefore
be unnecessary to enter upon a general review of the authori-
ties for the purpose of expressing our own views, as it is be-
lieved most, if not all, the cases having a direct bearing on
the question have been cited and commented on in one or the
other, or both, the briefs of counsel.

While it is not claimed in precisely so many terms, yet the
inexorable logic of appellee's position is, that the surviving
widow, having a family, is wholly powerless to do anything
by way of execution or performance of an ante-nuptial con-
tract, which gives to the wife a specific sum of money out of
her husband's estate in lieu of the award which the statute
gives to her as his widow, that will be a bar, or defeat the
right to such award,—or, in other words, the claim is, that
in such case, upon the death of her husband, she may go to
his executors and collect from them, as was done in this case,
the amount which they were bound to pay her under the ante-
nuptial contract in lieu of the award, and then turn round and
compel them to pay the award also.   If such a position as
this can be maintained it is certainly an anomaly in the law.
It is a rule of general application in the law of contracts, that
a contract between parties *sui juris* must be mutual,—that
is, if either is bound, both will be bound.   Now, suppose the
widow's award and dower in this case had turned out to be
worth less than the $12,000, and the executors for this reason
had declined to perform the agreement on their part, and she
now, instead of seeking to have her award allotted to her,
were prosecuting a suit on the agreement to recover the $12,-
000, is it not manifest she would be entitled to recover?   And
yet we are unable to perceive on what principle this could be
so unless she were also bound by the agreement.   The result
of the decisions of this court, as we understand them, go to
this extent, but no further:   A widow having a family, con-
sisting in part of the decedent's children, is entitled to the
widow's award, notwithstanding there is an outstanding ante-

nuptial executory contract, by which she has agreed to accept a certain sum of money, or something else in lieu of it. In other words, under the circumstances stated, so long as the contract remains executory she may repudiate it; but when, without fraud or imposition, she deliberately accepts from her husband's legal representatives that which, by the terms of the contract, she was to receive in lieu of the award, the right to repudiate the contract at once ceases, and under such circumstances she is estopped from setting up a claim to the award itself,—and this is clearly right, upon the plainest principles of natural as well as legal justice.

We are aware that general expressions are to be found in some of the cases, particularly that of *Phelps* v. *Phelps,* 72 Ill. 545, which seem to go further than we have stated; but these expressions are to be limited by the actual facts in the cases in which they were made. The only thing actually decided by the *Phelps case* is, that the award of a widow having a family, consisting in part of a minor child of the deceased, is not barred by an unexecuted ante-nuptial contract, and this is in strict conformity with the rule as laid down in the other cases in this court bearing upon the question. *Brenner* v. *Gauch,* 85 Ill. 368; *Cowdrey* v. *Hitchcock,* 103 id. 272.

The expressions just alluded to, upon a casual consideration, may be supposed to sanction the view that the children of the deceased, being members of the widow's family, have some vested interest in her award, or that it is, in some sense, trust property, held by her for the common benefit of the family, particularly the children of the deceased, and that on this ground she is unable to dispose of it. These expressions, properly understood, do not warrant any such conclusion. They were directed to the policy of the law, or the motives which led to its adoption, and were not intended to be understood as defining or limiting vested rights under it. The language of the statute giving the right, negatives such a

hypothesis in the very strongest possible terms.    It expressly
declares the statutory articles shall be allowed to the widow
"*as her sole and exclusive property forever.*"    When this right
once accrues to her by the death of her husband, it is well
settled she may exchange the specific articles of property
awarded to her by the statute, or she may release her right
to them altogether.    (*Telford* v. *Boggs*, 63 Ill. 498; *Simmons*
v. *Johnson*, 47 id. 350.)    These cases, as well as the very
words of the statute, clearly show she has the same dominion
and power of disposition over her award that any other abso-
lute owner has over his property.    Such being the case, upon
what principle can it be said that after having acquired a
vested interest in her award, as she does immediately upon
the death of her husband, she may deliberately accept an
equivalent for it, as fixed by her ante-nuptial contract, and
yet not be bound by her acceptance?    No one, we presume,
will question her right to sell or otherwise dispose of any or
all of the articles of property she takes under the statute,
in such manner as she may think proper, and that in the
absence of fraud or imposition of any kind she will, like
other persons *sui juris*, be bound by her contracts.    Now,
suppose some one other than her husband's executors had
gone to appellee and offered her the $12,000 for her entire
interest in the estate, and she had accepted it, as she did
from them, all will concede, we presume, that in the absence
of fraud, mistake or imposition of any kind, she would have
been bound by her acceptance,—and yet, on principle, there
is manifestly no difference between the two cases.

    It is well settled that in determining the amount of the
widow's award, without regard to whether there are children
of the deceased or not, all who constituted members of the
family at the time of his death, including servants and adults,
are to be taken into the account.    (*Strawn* v. *Strawn*, 53 Ill.
263.)    Yet it does not necessarily follow, where there are no
such children, the widow would be absolutely bound, as in

any other case, by an executory ante-nuptial contract, when fairly entered into; but inasmuch as we hold she is bound by such an agreement, where it has, in good faith, been fully executed by the husband's legal representatives, whether there be such children or not, that question becomes unimportant in this case, and it is therefore unnecessary to discuss it. However that question may be, from an examination of the cases to which our attention has been called, and of all that occur to us relating to this subject, it will be found that in every case where it has been held the widow was not bound by the ante-nuptial agreement, the widow's family consisted in part of a child, or children, of the deceased husband, and that the agreement was unexecuted by his legal representatives. So far the matter has come in actual judgment, and is authoritatively settled, but no farther. On the other hand, the cases already cited fully establish that where such an agreement has, in good faith, been fully performed by the husband's legal representatives, the widow will be concluded by it, whether there be any such children or not.

The judgment of the Appellate Court is reversed, and the cause remanded, with directions to reverse the order of the circuit court and dismiss the petition.

*Judgment reversed.*

Mr. JUSTICE WALKER, dissenting:

I regard the decision in this case as repugnant to *Phelps* v. *Phelps*, 72 Ill. 545, and subsequent cases based upon it. As I understand that case, it holds that the claim of the widow to specific articles of personal property is not the subject of contract or ante-nuptial agreement. It is there held that such a contract is forbidden by the policy of our statutes, and the opinion of the majority of the court, in this case, holds it is the subject of ante-nuptial contract, and virtually overrules the decision in that case. Whilst I dissented in that case, I am, after such a length of time, unwilling to

overrule or impair the force of that decision. I therefore dissent to the decision of the majority of the court in this case.

Mr. JUSTICE SCOTT, also dissenting.