ALBERTINE ZACHMANN

*v.*

WILLIAM ZACHMANN *et al.*

*Opinion filed February 18, 1903.*

1. PARENT AND CHILD—*child born in wedlock is presumed to be legitimate.* A child born in lawful wedlock is presumed to be legitimate; and this presumption is not overcome by proof of ante-nuptial conception.

2. SAME—*burden of proving illegitimacy is upon party asserting it.* A child reared in lawful wedlock of its mother and her husband, and treated and recognized by the husband as his lawful child, is *prima facie* the child of the husband, and the burden of proving the contrary is upon the party asserting it.

3. SAME—*what does not overcome the presumption of legitimacy.* If a child born fifteen days after her mother's marriage is treated and cared for by the husband as his child, the presumption of its legitimacy is not overcome by the fact that the mother was divorced from a former husband only twenty days before such marriage, particularly where the divorce was obtained by publication.

4. ANTE-NUPTIAL CONTRACTS—*what not payment upon ante-nuptial contract.* The collection of rents by a widow, after she has repudiated an ante-nuptial contract, in the belief that she is entitled to dower and homestead, does not constitute a payment upon the ante-nuptial contract.

5. SAME—*when ante-nuptial contract does not bar widow's award.* A widow whose family consists, in part, of a child of the deceased husband, may repudiate an executory ante-nuptial contract releasing the widow's award.

6. SAME—*homestead cannot be waived by executory ante-nuptial contract.* The homestead rights granted by statute cannot be waived by an executory ante-nuptial contract, even though the contract is made and acknowledged in conformity with the law relating to the release of homestead, where there is a minor child of the deceased householder, as well as the widow, who is interested in the preservation of the estate.

7. SAME—*when an ante-nuptial contract is inoperative in toto.* If an ante-nuptial contract providing for the payment of a gross sum for the release of the widow's award, dower and homestead rights is declared inoperative as to the provision for waiver of homestead and widow's award, it is inoperative *in toto* and does not affect dower.

8. CONTRACTS—*when public policy does not permit statute to be abrogated by contract.* Laws enacted out of concern for the public wel-

fare as well as for the benefit of those directly affected by the law, in so far as they confer privileges and exemptions upon persons not only for their own benefit but also for the benefit of others dependent upon them, cannot be abrogated by personal agreements.

MAGRUDER, C. J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

H. W. DIKEMAN, for appellant.

THOMAS J. HOLMES, JAMES MAHER, and ERNEST SEVERY, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a proceeding in chancery for the partition of the real estate of which Christian Zachmann died seized, among his heirs-at-law. The decree rendered in the cause denied to appellant, the widow of the deceased, dower or homestead in the real estate, and also decreed she was not entitled to the award out of his personal estate given by the statute to the widow of a deceased husband, on the ground the terms and conditions of an ante-nuptial agreement, entered into by and between the appellant and the deceased, her husband, provided she should accept and be paid the sum of $1000 out of the estate of the husband in full of all her interest in the estate, whether by way of dower, homestead or widow's award. The decree further declared the appellee Gertrude was not a daughter of said deceased and not entitled to share in his estate as an heir, and that John Zachmann, deceased, was a son of the deceased, and that Mary Mace, the daughter and only heir-at-law of John, was an heir of said deceased, Christian Zachmann. Errors assigned by the appellant, and cross-errors assigned by the appellee Gertrude, a minor, by her guardian *ad litem*, bring the correctness of these findings before us for review.

As the question of the force and effect of the ante-nuptial agreement depends, to some extent, upon whether

said Gertrude is the daughter of said deceased, the find-
ing of the decree upon that point will be first considered.

Gertrude Zachmann was born December 9, 1891. The
appellant was her mother, and at the date of her birth
was the lawfully married wife of said deceased, Christian
Zachmann. The husband and wife were living together
at the time of the birth of Gertrude, and so continued to
live together as husband and wife during the remainder
of the lifetime of the husband. He died July 3, 1901, at
which time Gertrude was of the age of about nine and
one-half years. During all of the time intervening be-
tween her birth and the death of said Christian, Gertrude
resided in the family of Christian and the appellant as
their daughter, and was in all respects treated by said
Christian as his child. He provided for her in all of her
wants and called her his daughter, and in the draft of a
will written by himself, but never legally executed, he
called her his daughter and devised to her one of the
two pieces of real estate here sought to be partitioned,
and bequeathed to her, as his daughter, whatever money
should remain after the payment of his debts and funeral
expenses. She lived in his family as his daughter at the
time of his death, and the proof is ample that he enter-
tained the affection of a father for her. Every act and
every expression of the deceased having any bearing up-
on the question of her paternity indicated her legitimacy,
and the record is barren of proof having any tendency to
show he had any doubt that he was her father. The
only fact relied on to cast doubts upon her parentage
was that her mother had been married to said Christian
but about fifteen days at the time of her birth, and that
the appellant, her mother, had only twenty days before
her marriage with Christian been granted a divorce from
one Wilhelm Juergens, her former husband. It appears
from the transcript of the record of the decree of divorce
that the said Wilhelm Juergens, defendant in said di-

vorce case, had been notified of the pendency of the bill
for divorce by publication.    Whether he was a non-resi-
dent of the State or on due inquiry could not be found
was not disclosed.    There was no proof whatever in the
record in the case at bar that said Juergens and the
appellant had lived together at or within the period of
conception of the said Gertrude, nor is there any proof
as to the whereabouts of said Juergens at any time.

Gertrude was born of the body of the appellant while
the latter was the lawful wife of said Christian Zach-
mann, and every child born in lawful wedlock is pre-
sumed to be legitimate.    (*Illinois Land and Loan Co.* v.
*Bonner*, 75 Ill. 315; 5 Cyc. 626.)    "A legitimate child is
he that is born in lawful wedlock or within a competent
time thereafter."    (1 Blackstone's Com. 446.)    A minor
child reared in the family of a lawfully married husband
and wife who are living together as husband and wife,
and is treated and recognized as their lawful offspring,
is *prima facie* to be regarded as the child of the husband,
and the burden of disproving such parentage is cast up-
on those denying it.    (*Metheny* v. *Bohn*, 160 Ill. 263.)    The
conception of Gertrude was ante-nuptial but her birth
was post-nuptial.    The presumption which arises from
birth in lawful wedlock is not overcome by proof, merely,
of ante-nuptial conception.    (Coke's Litt. 344a.)    Concep-
tion during wedlock is not essential to the presumption
of legitimacy which arises from birth in wedlock.    (*Rex* v.
*Luff*, 8 East. 198; *Dennison* v. *Page*, 29 Pa. St. 420; 5 Casey,
420.)    The mere fact that the legal relation of husband
and wife still subsisted between the appellant and the
said Juergens when Gertrude was conceived is not suffi-
cient to overcome the presumption that she was the child
of Christian Zachmann, arising from the fact that her
mother was the lawful wife of Zachmann when she gave
birth to Gertrude. This presumption is further strength-
ened by the fact that Gertrude was born within fifteen
days after the marriage between her mother and Zach-

mann, and was received by Zachmann, who knew all the facts relied on to cast doubts on her parentage, as his child, and was cared for and nurtured by him as his daughter during the remainder of his lifetime. The court erred in holding the presumption that Gertrude was the legitimate child of Christian Zachmann had been overcome. The decree should have declared said Gertrude to be the daughter of said Christian Zachmann, deceased, and as such to be entitled to share in his property as one of his children.

The ante-nuptial contract entered into between Christian Zachmann and the appellant was produced in evidence. It expressly provides appellant shall not claim the allowance or award allowed to a widow by the statute or dower or homestead in the lands owned by him, and expressly waives and releases her right to claim such award, dower or homestead in consideration of the payment to her of $1000 out of the estate of the husband. The agreement was signed by Christian and by the appellant, and appended thereto is the certificate of Ada C. Williams, notary public, showing that both of the parties to the agreement had acknowledged the same before her, and the certificate contains a clause showing that the appellant and said Christian each acknowledged that they had waived, released and relinquished all rights of dower and homestead. The acknowledgment is in compliance with the requirements of section 27 of the Conveyance act, with relation to the waiver and release of the estate of homestead in lands.

We have found and herein declared that the evidence established that Gertrude Zachmann was the daughter of said appellant and said Christian Zachmann, deceased, and is one of the heirs-at-law of said Christian. She was less than ten years old at the time of the death of her father. The appellant, said Christian, and the child, Gertrude, lived together as a family at the time of the death of said Christian.

The ante-nuptial contract, at the date of the death of said Christian, was purely executory, and was repudiated by the appellant, who claimed her widow's award and dower and homestead in the real estate of the deceased. It was contended in the trial court that the ante-nuptial contract could not be regarded as executory. This contention was based upon the insistence it appeared from the proof the appellant received from Christian, during his lifetime, the sum of $350 on the ante-nuptial contract. The chancellor found adversely to this contention, and that finding was clearly correct. The money paid to the appellant by the said Christian was shown to have been handed to her for the purpose of discharging claims against said Christian and paying household bills and family expenses. The sum of $67 alleged to have been received by the appellant from Mrs. Cull for the rent of a portion of the homestead property after the death of Christian, was not received as a payment on the amount specified to be paid in the ante-nuptial contract. The appellant had repudiated the ante-nuptial agreement, and received the rents under the belief she was entitled thereto until her dower and homestead in the real estate of her deceased husband should be assigned to her. The legality of this claim to the rents need not be here adverted to. It is sufficient for the present purposes that the amount so collected did not constitute a payment on the ante-nuptial contract.

The family of the deceased, Christian Zachmann, at the time of his death, consisted of himself, the appellant, (his wife,) and their daughter, Gertrude. The family of the appellant, the widow of Christian, after his death consisted of herself and the said Gertrude, the daughter of herself and her deceased husband. Did the unexecuted ante-nuptial contract bar her right to the award which section 74 of chapter 3, entitled "Administration," etc., provides shall be set apart for widows of deceased husbands whose estates are administered in this State? We

think not. In *Phelps* v. *Phelps*, 72 Ill. 545, it was said that the allowance of a widow's award was provided out of motives of public concern, and that there are grave reasons why a law enacted from public considerations should not be abrogated by mere private agreement, and that it would be in contravention of the policy of the law to permit a man, by an ante-nuptial agreement, to relieve his estate from the operation of the statute providing that an allowance should be made for the maintenance of his widow and minor children for a limited period, and upon this reasoning we held that an ante-nuptial agreement was inoperative as to the widow's award. In that case one child, born of the marriage, was living with the widow at the time of the application for an award. The contract was a bare undertaking on the part of the widow that she should have no rights in the property of the husband after his death, but that the same should pass to his administrators and executors free from all claims on her part.

In *Weaver* v. *Weaver*, 109 Ill. 225, there was no child or children of the deceased husband and his widow, but a son of the husband by a former marriage and the daughter of the wife by a former marriage lived in the family of the deceased husband as members of his family. The ante-nuptial agreement provided for the payment of $12,000 to the wife, and the same had been paid in full by the legal representatives of the deceased husband and accepted by the widow. We held the widow was concluded by the ante-nuptial agreement, and there said (p. 233): "A widow having a family, consisting, in part, of the decedent's children, is entitled to the widow's award, notwithstanding there is an outstanding ante-nuptial executory contract, by which she has agreed to accept a certain sum of money or something else in lieu of it. In other words, under the circumstances stated, so long as the contract remains executory she may repudiate it." And speaking of the other authorities relied

upon to sustain the view pressed upon the court that an ante-nuptial agreement was inoperative to abrogate the provisions of the statute providing for a widow's award, further said: "It will be found that in every case where it has been held the widow was not bound by the ante-nuptial agreement, the widow's family consisted, in part, of a child or children of the deceased husband, and that the agreement was unexecuted by his legal representatives. So far the matter has come in actual judgment and is authoritatively settled, but no farther. On the other hand, the cases already cited fully establish that where such an agreement has in good faith been fully performed by the husband's legal representatives the widow will be concluded by it, whether there be any such children or not." The declaration there made that it was judicially settled that a widow whose family consisted, in part, of a child of her deceased husband was not bound by an ante-nuptial agreement which was unexecuted and repudiated by her, stated correctly the principle applicable to the circumstances of the case at bar. The later cases of *McMahill* v. *McMahill*, 113 Ill. 461, *Spencer* v. *Boardman*, 118 id. 553, and *Christy* v. *Marmon*, 163 id. 225, announce no doctrine inconsistent with that declared in *Weaver* v. *Weaver*, *supra*. In *McMahill* v. *McMahill*, *supra*, the widow accepted the sum of money specified in the ante-nuptial contract to be paid to her, and it was held, upon the authority of *Weaver* v. *Weaver*, *supra*, that her right to a widow's award was barred. In *Spencer* v. *Boardman*, *supra*, there were no children born of the marriage to which the ante-nuptial contract related, and no children of the husband by his former marriage resided in his family at the time of his death, and the ruling that the widow was barred of her right to an award was therefore entirely consistent with the doctrine of the *Weaver case*. In *Christy* v. *Marmon*, *supra*, in which it was held that the right to an award was barred by an ante-nuptial contract, the husband left no children

him surviving. In the case at bar the deceased husband left him surviving a minor daughter and the appellant, his widow. The ante-nuptial contract remained executory,—a bare agreement,—and it was therefore within the power of the appellant to decline to be bound by the provisions of the contract as to her right to the widow's award.

We think appellant was also entitled to assert and maintain the right to a homestead. That the appellant, unless barred by the ante-nuptial agreement, is entitled to a homestead in the house and lot having the street number of 229 South Sangamon street, is beyond question. Though the ante-nuptial agreement contained a clause releasing and waiving the right of homestead, and though the agreement was acknowledged in conformity with the statute regulating the waiving and releasing of the estate of homestead, still we think the agreement was inoperative to destroy the right of homestead given by the statute to the appellant. In *McGee* v. *McGee*, 91 Ill. 548, we said the statute providing for the exemption of the homestead was made from motives of public concern, and that it was not in the power of a father and mother, by an ante-nuptial agreement, to so provide as to deprive their minor children of the benefits of the statute in case of their death, and said (p. 553): "It would seem to follow, therefore, that the children of the parties, no matter what construction shall be given to the ante-nuptial contract, during their minority are entitled to the benefit of their father's homestead; and how can it be preserved to them unless it is set apart to their mother, as their natural guardian? Should the construction contended for be adopted it would deprive the children of the decedent of the benefits which this humane statute was intended to throw around them in their tender years, and it seems to us a proposition wanting in the support of both law and reason that they can be deprived of such right by an ante-nuptial agreement be-

tween their parents, however comprehensive in its terms. * * * The policy of the law is to provide a home for the family, that they may be kept together; and the mother is not obligated by her ante-nuptial agreement to abandon her children, but may share with them the homestead which their father, in his lifetime, had provided, so long as the youngest child is under twenty-one years of age."

In *McMahill* v. *McMahill*, 105 Ill. 596, it was held that the ante-nuptial agreement there under consideration was ineffectual to bar the claim of homestead in the wife. The contract there being considered was not executed in conformity with the statute as to the release of a homestead, and while the want of an acknowledgment in conformity to the statute is adverted to and commented upon in the course of the opinion, it was there said that the principle announced in *Phelps* v. *Phelps, supra*, that a statute which had been adopted out of motives of public concern should not be abrogated by a private agreement, was applicable to the question then before the court and that the case then before the court was within the scope of that principle. It is manifest that in the decision of the *McMahill case* it was recognized that the statute providing for the exemption of homestead to a householder, and to the widow and children of a deceased householder until such children should reach the age of twenty-one years, was enacted from considerations affecting the public welfare, and that the principle which governed and controlled the decision in *Phelps* v. *Phelps, supra*, as to the effect of an ante-nuptial agreement to bar the widow's right to the widow's award, had like controlling effect upon an ante-nuptial agreement providing the right of homestead should be waived and released.

In *Crum* v. *Sawyer*, 132 Ill. 443, the ante-nuptial agreement there held to be ineffective to bar homestead was not acknowledged, and the decision in that case was allowed to rest upon the ground that the mere ante-nuptial agreement, unacknowledged, could not operate to release

the estate of homestead. In *Achilles* v. *Achilles*, 137 Ill. 589, the ante-nuptial contract had not been acknowledged in conformity with the provisions of the statute with relation to the release of the estate of homestead, and the decision that the ante-nuptial agreement was inoperative to waive and release the homestead of the widow was clearly correct upon that ground. The ante-nuptial contract in the case at bar was executed and acknowledged in compliance with the requirements of the statute with reference to the release and waiver of the estate of homestead, and the question seems now to be presented for the first time whether an executory ante-nuptial contract so executed and acknowledged is enforceable against the widow where there is a minor child of the party to the agreement, who, together with the widow, is interested in the preservation of the right of homestead.

The object of the Homestead Exemption act is to secure to the householder and his family the possession and enjoyment of a home which shall be secure to them against the misfortunes of life, and to continue such homestead for the benefit of the surviving husband or wife during life, and the children of the householder, if any there be, until such children shall have reached the age of twenty-one years. Statutes which the law-making body has been moved to enact out of concern for the public welfare as well as for the benefit of those to be more directly affected by the statute, in so far as such enactments confer privileges and exemptions on persons for the personal benefit of such persons and also for the benefit of others to whom the person so entrusted with the right or exemption sustains some relation which creates an obligation for the care, support and maintenance of such person so entrusted with such right or privilege, are, as a general rule, so construed as not to allow the donee of the privilege or exemption to treat it as a personal right or privilege. The exemption of personal

property of the debtor who is the head of a family can not be waived by a contract in advance entered into by the head of a family, for the reason the exemption is for the benefit of the family of the debtor as well as for himself, and the debtor cannot, for that reason, be permitted to contract in advance to deprive himself and family of the advantage intended to be preserved to them by the law. (*Recht* v. *Kelly*, 82 Ill. 147.) In the case cited it was said such a contract by the head of a family would be in contravention of the policy of the law, and hence would be inoperative and void. "Laws enacted from considerations of public concern and to subserve the public welfare," it was there said, "cannot be abrogated by mere personal agreements."

The courts generally regard it as against public policy to sustain a waiver, by an executory agreement, of the right conferred upon a debtor who is the head of a family, to claim as exempt property which the law designs shall be exempted from levy or sale for the benefit, in part, of such family. (12 Am. & Eng. Ency. of Law,— 2d ed.—192.) The right of a debtor who is not the head of a family to debar himself by contract of the privilege of the exemption laws in his favor stands upon different grounds, (*Powell* v. *Daily*, 163 Ill. 646,) the reason given being that the right to claim such exemption is purely personal to the debtor.

The Homestead Exemption statute was designed and adopted to subserve the general welfare, and we are clearly of the opinion the privileges and rights of exemption thereby granted to the widow and minor children of the deceased householder cannot be waived by an executory ante-nuptial contract, even if such agreement be executed and acknowledged in conformity with the provisions of the laws relating to the waiver or release of the estate of homestead, in any case in which minor children of the deceased husband, as well as the widow, are interested in the preservation of the right. Further than

this it is not, under the circumstances of this case, necessary to decide. The second section of the Homestead act provides that the exemption created in the householder and head of the family by the first section shall continue "after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, and of the children until the youngest child becomes twenty-one years of age." In the case at bar the homestead estate in the said premises having the street number 229 South Sangamon street, which the law conferred upon Christian Zachmann during his lifetime, upon his death was, by the force of the said second section of the Exemption act, continued for the benefit of appellant and also of said Gertrude, minor daughter of said Christian. The exemption thus continued to the appellant, so far as the said Gertrude was concerned, was conferred upon the said appellant because of the relation of dependency of said Gertrude upon her, and it seems perfectly clear, upon reason and principle, that the appellant could not, by the ante-nuptial agreement, contract away the privilege and right which the law had conferred upon her, in part, for the benefit of such minor child or children of her husband as might be living with him as members of his family at the time of his death. Nor should such ante-nuptial agreement be regarded as having any legal force or efficacy to affect the right of the appellant in such homestead exemption, for the reason that, in view of the fact the mother is the natural guardian of the child and that the welfare of the child depends upon the care and affection of the mother, to give the ante-nuptial agreement that effect would be to contravene the policy of the law. The ante-nuptial agreement should have been declared inoperative as against the appellant.

If the appellant had no interest in the property of the said Christian Zachmann, deceased, either real or personal, other than the right of dower, a different question

as to the force and effect of the ante-nuptial agreement would be presented. But finding such contract inoperative to affect the right of the appellant as to her homestead exemptions and to have been obviated as to her widow's award by her repudiation thereof while it remained executory, it is clear it cannot be given any effect whatever, for the sum to be paid her, specified in the contract, is a gross sum for the waiver of her widow's award, dower and estate of homestead. Such sum cannot be apportioned and the ante-nuptial agreement sustained in part, and for that reason, if not for others, it must be declared inoperative *in toto.*

The trial court found that one John Zachmann was a son of said Christian, and that said John had departed this life leaving the appellee Mary Mace his daughter and sole heir-at-law, and decreed that said Mary Mace should share in the estate accordingly. It is urged by the appellant that the finding that the said John was the son of said Christian is against the weight of the evidence. We find in the record testimony to the effect that the said John was the son of the sister of a former wife of the said Christian, and not the son of Christian, but the record also contains proof showing with great clearness that the said John, from a very early period in his life until he reached the age of maturity, was reared in the family of the said Christian and his first wife as a member of their family and as one of their children; that he was called John Zachmann by said Christian and his former wife, and was treated and recognized by them as their son. A number of witnesses testified they had heard Christian Zachmann speak of John as his son. It was very clearly shown that John was regarded and treated by the sons and daughters of said Christian as their brother, and there is evidence in the record which, so far as we can see, was entitled to credence, that Rosa McCormick, the oldest daughter of said Christian, and Willian Zachmann, his oldest living son, had never heard

that any one claimed that John was not their brother until about the time of the death of said Christian. There was other testimony of countervailing tendency, but upon consideration of all the proof upon the point we are inclined to agree with the conclusion reached by the chancellor as to the legitimacy of John, and as to the right of said Mary Mace to inherit from said Christian, as being his grand-daughter.

The decree appealed from must be and is reversed, and the cause will be remanded to the circuit court, with directions to the chancellor to enter a decree finding that the said Christian Zachmann, deceased, left him surviving Albertine, his widow; Rosa McCormick, his daughter; William Zachmann, his son; Mary Mace, only daughter of John Zachmann, a deceased son; Jessie I., Elsie M. and Oscar Moore, children of Mary Moore, a deceased daughter, and appellee Gertrude, a daughter, to whom the real estate of which the said Christian died seized descended, as follows: To William Zachmann, Rosa McCormick, Mary Mace and Gertrude Zachmann each an undivided one-fifth part, and to Jessie I., Elsie M. and Oscar Moore each an undivided one-fifteenth part, all subject to the dower and homestead rights of said Albertine, the widow; that said Rosa McCormick conveyed her undivided interest in said real estate to said William Zachmann, who therefore became the owner of an undivided two-fifths of said real estate, subject to the dower and homestead rights of the appellant; and to take such further steps in the said partition proceeding as to law and justice shall appertain.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE MAGRUDER, dissenting.