### Charles B. Pavlicek, executor, v. Katarina Roessler.

#### Gen. No. 11,761.

1. JUDICIAL NOTICE—*of what taken.* Judicial notice will be taken of matters constituting a part of the record in a cause.

2. ORDER—*when impropriety of, will not reverse.* Where a part of an order is improper, such order will not be reversed where such improper part may be rejected as surplusage without changing the effect of the order.

3. WIDOW'S AWARD—*when ante-nuptial contract does not release.* An ante-nuptial contract does not bar the right to a widow's award where it does not specifically release the same or employ words capable of such construction.

Contest in court of probate. Appeal from the Circuit Court of Cook County; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1904. Affirmed. Opinion filed June 20, 1905.

H. B. SPURLOCK, for appellant.

JOHN REID McFEE, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The question in the case is whether the ante-nuptial contract between appellee and her deceased husband, Joseph Roessler, is under the facts of the case, a bar to her right to a widow's award in his estate. The decision of the Probate Court was that it was not a bar and the appraiser's esti-

mate of one thousand dollars as the widow's award in his estate was approved by that court and ordered to be recorded. The Circuit Court, upon appeal, ordered that said order of the Probate Court be approved and ·confirmed and also that the appraiser's estimate of the widow's award in said estate be approved and recorded, and from this order the executor of the will of Joseph Roessler prosecutes this appeal.

Appellee contends that as the trial in the Circuit Court was *de novo* there was no order of the Probate Court to "confirm and approve," and therefore so much of the order and judgment appealed·from as approves and confirms the order of the Probate Court was improper, and further contends that so much of said order as orders that, "the appraiser's estimate of the widow's award in the estate of said deceased be approved and recorded," ·was improper because no appraiser's estimate of the widow's award was put in evidence.

The appeal to the Circuit Court was from the order that the appraiser's estimate of the widow's award be approved and recorded.

The transcript filed in the Circuit Court on that appeal became a part of the record of the cause in the Circuit Court. That transcript properly contains a copy of the record of the appraiser's estimate of the widow's award. The Circuit Court took judicial notice of the appraiser's estimate of the widow's award, because it was a part of the record in the cause, and it was not necessary to put it in evidence. 1 Wharton on Evidence. sec. 325; Secrist v. Petty, 109 Ill. 188.

If the contention of the appellant be conceded that so much of the order and judgment of the Circuit Court as orders that the order of the Probate Court, "be approved and confirmed" was improper, still the contention will avail him nothing for the Circuit Court also ordered that the appraiser's estimate of the widow's award "be approved and recorded."

The principal contention of appellant is that the court erred in holding that appellee by the ante-nuptial contract, taken in connection with the facts agreed upon at the trial, did not waive her right to a widow's award in the estate of

her deceased husband. The ante-nuptial contract between Roessler of the first part and appellee of the second part, begins with a recital that each had certain personal property and also certain real estate therein described, and that a marriage was intended between them, and that it had been and was agreed between them, "that each of them shall and will mutually waive and release all right and interest that they and each of them may have in and to the property of the other." The agreement of Roessler to release and waive all interest in the property of appellee is then set out and then follow the covenants of appellee as follows:

"And the said party of the second part, in consideration of the premises above recited, and the covenants of the said party of the first part hereinbefore set forth, does hereby remise, release and relinquish unto the said party of the first part, his heirs, executors, administrators, devisees and assigns, all her right and interest, of any kind and nature whatsoever, and especially her contingent right of dower and homestead in all lands of which the said party of the first part is now seized, or of which he may hereafter become seized; and doth hereby covenant to and with the said party of the first part, his heirs, executors, administrators, devisees and assigns, that in the event she should survive the said party of the first part she will not sue for, claim or demand any right of dower or other interest whatsoever in or out of any and all real estate of which the said party of the first part may die seized, or to which he may be entitled at the time of his death, either in possession, reversion, remainder, or otherwise.

And, for the consideration aforesaid, the said party of the second part does hereby release and relinquish unto the said party of the first part, his heirs, executors, administrators and legatees, all right, title and claim to any and all distributive share or portion of the personal estate of which the said party of the first part may be possessed, or to which he may be entitled, in remainder, reversion, or otherwise; and does hereby covenant and agree to and with the said party of the first part, his heirs, executors, administrators

and legatees, that in the event she should survive the said party of the first part she will not sue for, claim or demand any distributive share or interest, whatsoever, to which she might be entitled as the surviving widow or wife of the said party of the first part, in or out of any and all personal estate of which the said party of the first part may die possessed, or to which he may be entitled at the time of his death, in reversion, remainder, or otherwise."

The facts agreed upon were that the parties were married the day after the contract was made; that the husband died three years after the marriage; that no children were born of the marriage; that neither husband nor wife had at the time of the husband's death a minor child living; that the husband at the time of his death was living separate and apart from his wife; that a bill for separate maintenance filed by the wife was then pending; that the personal estate of the deceased husband was of the value of $22 and his real estate of the value of $3,000, encumbered by a mortgage for $600.

That appellee might have waived her right to a widow's award in the estate of her deceased husband, if she survived him and had no minor child living at her death, is not disputed. In Weaver v. Weaver, 109 Ill. 225, the contract was that there should be paid to the widow, if she survived her husband, $12,000, "in lieu of dower or widow's portion" and it was held that "widow's portion" in that connection meant widow's award. In McMahill v. McMahill, 113 Ill. 461, the contract in express terms waived the widow's award. In Phelps v. Phelps, 72 Ill. 545, the clause which it was insisted barred the right to a widow's award was as follows: "It is agreed that the property of each shall be kept separate and distinct, held and enjoyed by each separately and distinctly, by each in the same manner as if they were and had continued unmarried; and upon the death of either party his or her real estate and personal property shall pass to his or her heirs, executors or adminstrators, free from all claim and survivor." In that case it was said (p. 547): "Treating the provision which the law makes for the widow

and children residing with her, by the allowance of specific
articles of property, as a means of support, it cannot be said
to be an interest in the property of itself of the husband.
It comes within no definition of property. It is a benefit
created in their favor by positive law and adopted for rea-
sons deemed wise and politic.

The ante-nuptial agreement in this case makes no allusion
to their rights. Hence it cannot be said that the petitioner
has released her rights to the benefits of the obligations im-
posed upon her husband and his estate which are to enure to
her and her family in case of his death."

The language of the contract in the Phelps case is broader
and more sweeping than any found in the contract in this
case. The ante-nuptial agreement in this case, as in that,
makes no mention of appellee's right to a widow's award.
Nor are there in the contract in this case words that can
be construed to refer to or mean the widow's award. The
word "portion" in the phrase "distributive share or *portion*
of the personal estate," etc., cannot be held to refer to or
include the widow's award. It means the distributive por-
tion, the distributive share of his personal estate to which
she would be entitled under the statute of Descent and Dis-
tribution. In that statute it is provided that in a certain
contingency the estate shall be divided in equal parts among
the parents, brothers and sisters of the deceased, "allowing to
each of the parents, if living, a child's part or to the sur-
vivor of them, if one be dead, a *double portion.*"

By the terms of the contract appellee waived only inter-
ests and rights in the property of her husband. That her
right to a widow's award in the estate of her deceased hus-
band is not an interest in the property itself of the husband,
was expressly decided in Phelps v. Phelps, *supra,* and upon
the authority of that case the order and judgment of the
Circuit Court in this case must be affirmed.

*Affirmed.*

MR. JUSTICE SMITH took no part in the decision of this
case.