## CHARLESTOWN.

BEARD *et als. v.* BEARD *et al.*

Submitted January 19, 1883—Decided September 22, 1883.

(*SNYDER, JUDGE, Absent.)

1. A deed of marriage settlement will not divest the marital rights of the husband to a greater extent than the terms of the deed clearly require. (p. 138.)

2. A deed of marriage settlement settling the wife's property on her for her sole and separate use and authorizing the wife to dispose of her separate property by deed or will concluding with these words: "that they," the husband and wife, "relinquish all claim, title or interest in each other's property that might vest in them under the law by reason of their expected marriage," can not be construed as clearly relinquishing and releasing all the interest which the husband shall have in her separate personal estate as her sole distributee, if she dies leaving no descendants and intestate without having disposed of her separate estate, and therefore the husband surviving her and she dying intestate and without descendants, he is entitled to the whole of her personal estate to the exclusion of her next of kin. (p. 139.)

GREEN, JUDGE, furnishes the following statement of the case:

In June, 1881, John G. Beard and Elizabeth J. Beard, his wife, Thomas C. Blair, Doctor F. Blair, J. C. Blair, Wm. M. Blair, Wm. Hill and Mariam J. Hill, his wife, Shannon Clutter, Wm. Clutter and Enos Clutter filed their bill in the circuit court of Greenbrier county against Abram M. Beard and William L. McNeal. The bill alleged, that Mrs. Martha A. Beard died in May, 1879, intestate and without issue, leaving her husband, Abram M. Beard, to survive her, who qualified as her administrator on June 2, 1879, his co-defendant, Wm. L. McNeil, being his surety in the administration bond given by him; that there came into the hands of Abram M. Beard, as administrator of Martha A. Beard, personal estate belonging to the deceased amounting to six hundred and twenty-two dollars and forty-two cents; that she owes no debts. The bill recites, not alleging positively, as

*Counsel below.

it should have done, that the plaintiffs, the said Blairs, are the brothers and sisters of the deceased, who left no father or mother living, and that the plaintiffs, the said Clutters, are her nephews, the children of a deceased sister, and that thus the plaintiffs are the next of kin and sole distributees of the deceased, Mrs. Martha A. Beard, her surviving husband, Abram M. Beard, having no interest in her estate by reason of a marriage settlement made between him and her prior to the marriage. This marriage settlement had been duly recorded on May 17, 1878, and a certified copy thereof is filed with the bill as a part thereof. It is in these words:

"This article of agreement, made and entered into this the 7th day of May, 1878, between Abram M. Beard, of the county of Greenbrier, and Martha A. Clark, of the county of Pocahontas, both of the State of West Virginia, witnesseth:

"That in consideration of the fact that the said Abram M. Beard and Martha A. Clark being desirous of entering into the bonds of matrimony, and each one wishing to keep his or her property, both real and personal, in his or her own name and under separate control, and to be disposed of as he or she separately may desire, either by sale or otherwise, the said Abram M. Beard and Martha A. Clark agree that all the property, both real and personal, owned by them shall remain separate and under his or her control and each in his or her own name the same as if they had never been married; and that none of the property of either one shall be subject to the debts of the other; and that they relinquish all claim, title or interest in each other's property that might rest in them under the law by reason of their expected marriage.

"Witness our hands and seals this 7th day of May, 1878.

"MARTHA A. CLARK.    [SEAL.]
"A. M. BEARD.         [SEAL.]"

The bill prays for a settlement of the accounts of Abram M. Beard as administrator of Martha A. Beard, and for a decree against him and his surety for the balance, which may be found in his hands as such administrator, and for general relief. The summons to answer this bill was served and a

few days thereafter, at the June term, 1881, without any written notice, that such motion would be made before the necessary time had elapsed for taking the bill for confessed, the circuit court on motion of the plaintiff referred the cause to James Withrow, a commissioner of the court, who was directed, after ten days notice to the parties, to settle the accounts of Abram M. Beard as administrator of Martha A. Beard. The clerk was directed to convene in the manner required by law the creditors of Martha A. Beard, deceased.

The notices required having been given, on August 30, 1881, the commissioner reported, that on June 3, 1879, Abram M. Beard qualified as administrator of Martha A. Beard; that he had forfeited his commissions by not settling his accounts in the time required by law; that the property of the decedent, which came into his hands and which was retained by him and not sold, was appraised at three hundred and twenty one dollars and forty-nine cents, with which he is chargeable, and he is also chargeable with property sold by him of his intestate amounting to three hundred dollars and ninety-five cents, in all six hundred and twenty-two dollars and forty-two cents. All the vouchers with the exception of two produced by the administrator as showing payments made by him were for accounts created after the marriage and consist principally of physician bills against her during her last illness and bills principally for clothing for her purchased while she was the wife of Abram M. Beard. These payments and the funeral expenses constituted the payments, which had been made by Abram M. Beard as administrator. The only two debts paid by him, which were contracted before her marriage by her, were one of eighty-five dollars and fifty-five cents and another of two hundred and two dollars and fifty cents. The commissioner was of opinion, that, as it was Beard's duty as husband to provide for his family, these two payments were the only ones for which he was entitled to any credit; and if the accounts were so stated, he would be indebted to the estate as of November 1, 1881, three hundred and sixty-six dollars and seventeen cents. If allowed credit for the physician's bill paid by the administrator and all other payments including the funeral expenses, the bal-

ance due from him as of November 1, 1881, would be one hundred and ten dollars and seventy-five cents.

The defendants excepted to this report because of the non-allowance as in the second statement of all these payments made by the administrator and claimed, that as husband and administrator Abram M. Beard was entitled to the whole estate. To the alternative statement the plaintiff excepted because of the allowance in it of credits for these payments. The two statements represented the claims of each party respectively.

At the November term, 1881, Abram M. Beard demurred to the bill, because on its face it showed, that the plaintiffs had no interest in the estate of Martha A. Beard, and that he the defendant was entitled to the whole of it. He also filed an answer setting up this claim.

On November 25, 1881, the court entered the following decree:

"The subpœna in this cause having been returned executed, and the defendants still failing to appear and answer the plaintiffs' bill, the said bill is taken for confessed, and this cause having been regularly matured and set down for hearing at rules, came on this the 25th day of November, 1881, to be heard upon the subpœnas executed, and the bill taken for confessed, as aforesaid, the interlocutary order entered at the June term, 1881, the report of Commissioner James Withrow made in pursuance of said order, the exceptions taken to said report by both plaintiffs and defendants, exhibits filed, and the arguments of counsel. Upon consideration whereof it is adjudged, ordered and decreed that the exceptions taken by the plaintiffs be sustained, those taken by the defendants overruled, and the first statement of Commissioner Withrow's report of the administration account of the defendant, A. M. Beard, upon the estate of his intestate, which shows a balance of three hundred and sixty-six dollars and seventeen cents, as of November 1, 1881, in his hands and due to said estate, be and it is hereby confirmed; and the defendants not asking a recommittal of said report to the commissioner, it is further adjudged, ordered and decreed that Alex. F. Mathews, general receiver of this court, recover from the defendants, Abram M. Beard and Wm. L.

McNeal, the surety in his bond as administrator, the said sum of three hundred and sixty-six dollars and seventeen cents and with interest thereon from the 1st day of November, 1881, until paid; and it appearing from said report of Commissioner Winthrow that there are no debts against the estate of the said Martha A. Beard, and that her distributees in the said bill mentioned are entitled to the said sum in the hands of the said administrator, it is further adjudged, ordered and decreed that the said general receiver, when the amount hereinbefore decreed to him shall have been collected, shall distribute and pay over the net proceeds thereof to the said distributees according to their respective interests therein, paying one-seventh of said net proceeds to each of said distributees, except Shannon, Joseph, William and Enos Clutter, to each of whom he shall pay one-fourth of one-seventh, and the costs of the suit shall be paid out of said fund."

From this decree this Court granted an appeal and *supersedeas* on the petition of Abram M. Beard, bond and security conditioned according to law being required of him in the penalty of seven hundred dollars.

*A. C. Snyder* for appellants.

*A. F. Matthews* for appellees.

GREEN, JUDGE:

The important and controlling question in this case is: Was Abram M. Beard as the survivor of his wife Martha A. Beard and as her administrator entitled to the whole of her personal estate after the payment of her debts, or was he bound to account therefor to her next of kin, her brothers, sisters and nephews, as her distributees? This must depend upon the construction given to the marriage-settlement made and entered into between Abram M. Beard and Martha A. Clark, formerly Blair, at the time of their marriage dated May 7, 1878, a copy of which has been given at length in the statement of the case. If Abram M. Beard was not bound to account to his wife's next of kin for her personal estate in his hands as administrator, the circuit court ought to have sustained his demurrer to the plaintiffs' bill and dismissed the same at their costs. And if this be so, we need

not consider the several questions which have been argued by counsel, and which fairly arise in this case.

At common law on the death of a wife her real estate descended to her heirs immediately, except where she had had a child by her surviving husband born alive and capable of inheriting her estate, in which case he had a life-estate in such lands as tenant by courtesy. And at her death, if he survive, and she leaves no children, he will as her administrator be entitled to all her personal estate which continued in action or unrecovered at her death. If she owned a separate estate, which had been bestowed on her by deed or will, or which had arisen from a marriage-settlement made by her with her husband, if there was nothing in the instrument creating the separate estate which otherwise provides, her separate estate both real and personal, if she died intestate leaving her husband surviving and no children, would pass in like manner to her husband by statute. See Code, chapter 78, § 9 cl. 2, p. 485. He would be tenant by courtesy of her separate real estate under the same circumstances, as he would be tenant by courtesy of her real estate at common law. See *Winkler* v. *Winkler's Ex'r*, 18 W. Va. 455. And if the husband survives the wife, he will as her administrator and sole distributee be entitled to all her separate personal estate, when she leaves no children, where the instrument creating such separate estate does not otherwise provide. See Code, chapter 78, § 9 cl. 2.

The marriage-settlement in this case clearly created a separate estate in Mrs. Martha A. Beard after her marriage in all of her property both real and personal, as by the express terms of this settlement "her property both real and personal was to remain in her own name and under her separate control and to be disposed of, as she may desire either by sale or otherwise," and "he agreed, that all the property both real and personal owned by her should remain separate and in her own name, the same as if she had never married." Upon her death leaving no child her separate personal property by section 9 of chapter 78 clause 2 of Code passed to her surviving husband, unless in this marriage-settlement some provision can be found, which prevents the operation of the general law upon her personal estate.

Our first enquiry will be as to the character of the provision, which the law would require to be found in this marriage-settlement, in order to prevent her husband on her decease taking all her personal property. It is settled law in this State, that when by the general law of the land real estate descends to a certain person, it can not be prevented from so doing by the strongest declaration in the will of the testator, that such person shall after the testator's decease have no part of his property. Such person would nevertheless take all the real property of the testator by descent, which was not by the will devised to others. An heir cannot be disinherited by the strongest declaration, that he shall not take. *Boisseau* v. *Aldridges*, 5 Leigh 222; *Denn* v. *Gaskin*, 2 Cowp. 657, 661; *Right* v. *Sidebotham*, Doug. 759; *Jackson* v. *Shauber*, 7 Cow. 187, 195. It is true, that the devise to others, which would disinherit, need not be a devise in express words. If however it be not given in express words but by implication only, the implication must in every case be *necessary* to carry into effect the clear intent of the testator. Conjecture cannot be taken for implication in such case. By *necessary implication* in such case is meant so strong a probability of intention, that an intention contrary to that, which is imputed to the testator, cannot be supposed. See Lord Eldon in *Wilkinson* v. *Adam*, 1 Ves. & Bea. 465, and Lord Mansfield as cited by Lord Loughborough in *Lytton* v. *Lytton*, 4 Bro. C. C. 441.

In *Boisseau et al.* v. *Aldridges*, 5 Leigh 222 the testator by his will declared, "that he wished this instrument to prevent either of two sisters, naming them, or their husbands from having one cent of my estate." It was nevertheless held, that these two sisters, and their husbands were entitled as heirs and distributees to two fifths of his estate, the decedent leaving in all five sisters and their descendants. It seems to me upon the principles laid down in this case, that if the testator had devised real and personal property to these two sisters for their sole and separate use free from the control of their husbands and not subject to their debts and had declared in the most explicit language, that upon the death of these sisters their husbands should under no circumstances be tenants by courtesy or distributees of or in any manner re-

ceive any part of said property under any circumstances, and these sisters had died intestate without disposing of such property, their husbands would have taken the real property as tenants by courtesy and the personal property as distributees, precisely as if the testator had not thus attempted to prevent them from ever enjoying any part of it.    To do this effectually, he would have had to devise or bequeath it to others on the death of his sisters expressly or by necessary implication; and such necessary implication would not arise from his express declaration, that their husbands were never to enjoy any part of said property.    They would take by courtesy or as distributees of their wives in such case and could not by any words of the testator be disinherited, if the property was given in fee simple or absolutely to the wives. And it seems to me obvious, that the same results would necessarily follow, had the gift to the sisters been made by the brother by deed instead of by will, though in the deed it had been declared, that the husbands never should under any circumstances enjoy any part of the property.    For in each case, as the sisters had the fee simple or absolute property, on their respective deaths it would necessarily pass to their heirs or distributees or to their husbands as tenants by courtesy unaffected by the declared wishes of the donor, as he can not change the law of descents and distribution.

But if we suppose, that instead of a separate estate in real and personal property being given by a third person to a wife she while unmarried owned such property, and in contemplation of marriage by a marriage-settlement executed by both the intended wife and husband all her property real and personal is settled upon her in fee simple or absolutely for her sole and separate use free from the control of her intended husband and not liable to his debts, and after the marriage she dies leaving no descendants, would her husband, if she had had a child, be tenant by courtesy of her land, and would he take all her personal property as distributee, in case she made no disposition of either her real or personal property by will or otherwise?    It seems to me he would, and that it has been so decided in effect by the court of appeals of Virginia in the case of *Pickett and wife et al.* v. *Chilton*, 5 Munf. 467.

But if in addition to the settling on the intended wife of all her property real and personal free from the debts or control of her intended husband he had in the marriage-settlement for a valuable consideration expressly stipulated and agreed, that if his wife should die childless and intestate, and he should survive her, he would never set up any claim to the enjoyment of any part of her real or personal estate, would the same descend to her heirs and next of kin immediately on her death, and would he be thereby excluded from taking as tenant by courtesy or as her distributee? As an original question much might be said on both sides of this question; but it has, I think, been settled in this State by the case of *Charles* v. *Charles*, 8 Gratt. 486, that "the rights of the husband to the property of his intended wife may be intercepted by his agreement to that effect; and where by express contract, for which the marriage is a sufficient consideration, he agrees to surrender his right to the enjoyment of the property during coverture *and his right to take as survivor*, there remains nothing, to which his marital rights can attach during coverture or after the death of his wife. In such case the wife is to all intents to be regarded as a *feme sole* in respect to such property; and there would seem to be no necessity for any limitation to her next of kin in the event of failure to appoint during her lifetime. The husband having by contract for a good consideration released his rights as survivor, the property must pass as though she had died *sole* and intestate." In that case it was so held, the husband having as shown to the court expressly released all his rights in her property, in case he should survive, even though she had not disposed of the same by will or otherwise. And we infer from the principles laid down in that case that though the husband in the marriage-settlement for a valuable consideration expressly released all his interest in his wife's separate property, should she die without disposing of the same and he survive her, yet if such a release must necessarily be implied from what he did expressly agree to, so that the court is satisfied, that the parties contemplated her dying without issue and without disposing of her separate property, and he clearly intended in such contingency not to claim any interest in the property but to release the same, then her next

of kin would take, though she died intestate and without descendants. But the husband and not the next of kin will take her separate personal estate as distributee and as her administrator, unless by this marriage-settlement he has either expressly or by necessary implication released all interest in her separate personal estate, in the event she should die without disposing of the same and without descendants. And that under these circumstances he would take as her administrator and sole distributee to the exclusion of her next of kin is, I think, fairly deducible from the cases of *Pickett and wife* v. *Chilton*, 5 Munf. 467, and *Mitchell* v. *Moore et al.*, 16 Gratt. 275.

The question then to be determined in this case is: Did Abram M. Beard by the marriage-settlement dated May 7, 1878, between him and Martha A. Clark his intended wife either expressly or by necessary implication agree to release and surrender all his interest in his wife's separate personal estate, in the event she should die before him leaving no descendant and without disposing of her separate personal estate, which she was authorized to do? If he did, he as her administrator is bound to account to her next of kin, and the bill filed by them must be regarded as a good bill, which on the demurrer should have been sustained. If on the other hand he did not expressly or by necessary implication make such an agreement to release his interest under such circumstances, he is not bound to render any account to her next of kin but has a right to retain as her sole distributee all her estate in his hands as administrator, and the court should have sustained his demurrer to the bill filed by her next of kin to hold him to a settlement as administrator and should have dismissed their bill.

That he by this marriage-settlement agreed, that she should have a separate estate in all her property and might dispose of it in any manner she pleased, is clear. But is there anything in this marriage-settlement, which shows clearly that he intended and agreed expressly or by necessary implication, that he would surrender and release any interest he might have in her separate personal estate as her administrator and sole distributee, if she should die childless and without disposing of such separate

personal estate? It seems to me that there is not. There is but one clause in this marriage-settlement, which could possibly be so interpreted, that is, the last clause, by which "he relinquishes all claim, title or interest in her property that might vest in him under the law by reason of the expected marriage." What is the natural meaning of this language? It seems to me, that the parties had in contemplation the well-known law, that upon the consummation of the marriage the husband became entitled to all the wife's personal property as the immediate and direct consequence of the marriage; and that Beard thereby intended and did release all the claim, title and interest, which would have been his immediately on the consummation of the marriage; and that this clause was intended only to make clear the provisions before inserted in the agreement, that her property both real and personal should belong to her as separate property under her control, which she could sell or dispose of in any manner she pleased. To remove any possible obstacle to her so holding and disposing of her property, he agreed in this last clause to release the interest in it, which he would acquire by the marriage. But there is nothing in this clause or in any part of the agreement, which indicates, that the parties contemplated her dying childless without disposing of her property. If they were not contemplating such a contingency, there could be no express agreement and no agreement necessarily implied, that in such a contingency he would release his rights as survivor or sole distributee of his wife. It seems to me, that the whole intention of this agreement was to give her a sole and separate estate free from the control of her husband or from his debts during the coverture with power on her part to sell or by will to dispose of the same as she pleased. This was all that was contemplated by the parties at the time. As she failed to sell her property or to dispose of it by will, as she might have done, the inference is, that she was satisfied with the disposition made of it by the law, that is, that it should all go to her husband as her sole distributee.

Do the words "he relinquishes all claim, title or interest in her property that might vest in him under the law by reason of their marriage" necessarily mean "all the claim, title

or interest in her property, that might accrue to him by her death without children and intestate?" The interest he now claims in her property is by reason of her death without children and intestate, and not simply by reason of the marriage. His right during the coverture to take possession of and hold as his own all her personal property was obviously "a right which vested in him under the law by reason of the marriage," which was the right he released. His right as her distributee vested in him under the law by reason of her dying intestate and childless. It is true, that the marriage was a necessary condition to his being her distributee, but the immediate reason thereof or the cause of his being her distributee was her death intestate. There is nothing in the marriage-contract indicating clearly, that he intended to release his interest accruing by reason of her death intestate but only such interest as accrued by reason of the marriage, that is, as I understand it, his marital right during the existence of the coverture to take possession of and hold as his own all her personal property.

If this be the true meaning of this contract, as it seems to me to be, it is obvious, that under the law, as we have laid it down, her next of kin had no interest of any sort in her personal estate, and the circuit court on his demurrer ought to have dismissed their bill at their costs.

The decree of the circuit court of November 25, 1881, must therefore be set aside, reversed and annulled; and the appellants must recover of the plaintiff below their costs in this Court expended; and this Court proceeding to render such decree, as the court below ought to have rendered, doth sustain the demurrer of Abram M. Beard in his own right and as administrator of Martha A. Beard and doth dismiss the plaintiffs' bill at their costs.

JUDGES JOHNSON AND WOODS CONCURRED.

DECREE REVERSED.   BILL DISMISSED.