# CHARLESTON.

ERNEST F. BRAMER *et als.* v. J. BENJAMIN BRAMER *et als.*

Submitted April 29, 1919.    Decided May 6, 1919.

1. LIFE ESTATES—*Oil and Gas Lease—Right to Rents.*

If the lessee in an oil and gas lease, subsequent to the death of the lessor, enters upon the leased premises and drills and produces oil and gas, the wells so drilled will be regarded as open mines at the time of the lessor's death, and a life tenant will be entitled to the rents, issues and profits reserved to the lessor, accruing from such mines during the life tenancy. (p. 171).

2. CURTESY—*Descent and Distribution—Dower—Husband and Wife— Antenuptial Contract—Release of Interest in Each Other's Property.*

Persons contemplating marriage may in consideration thereof, by antenuptial deed or contract in clear and unequivocal terms, or by terms from which it must be necessarily implied, release and relinquish all claim, title and interest in each other's property then owned or to be thereafter acquired, which would otherwise accrue to them by the marriage, and in the right to take upon the death of the other dower or curtesy or by inheritance. (p. 171).

3. HUSBAND AND WIFE—*Antenuptial Contract—Construction.*

But neither the husband nor wife should be deprived thereby of his or her respective marital rights in the other's property to a greater extent than is clearly manifested by the plain words of the instrument or by necessary implication therefrom. (p. 172).

4. DESCENT AND DISTRIBUTION—*Marriage Settlement—Construction.*

A deed of marriage settlement executed in July 1866, in contemplation of marriage and before the statute creating separate estates of married women, effective April 1, 1869, was enacted, providing that after the marriage the wife should "hold and enjoy her said estate * * to her sole and separate use," and with power reserved in her, her heirs and assigns thereafter by will, deed or otherwise to sell, exchange, invest or dispose thereof or of any other estate she might thereafter acquire in her own right by descent or otherwise, "to the intent that the aforesaid estate may not be at the disposal of or subject to the control of debts, forfeitures or engagements of the said party of the first part, her intended husband," and containing no other words of limitation on the rights of the husband, properly construed does not deprive him of any of his marital rights accruing on the death of the wife, in any property not previously disposed of by her. (p. 172).

5.  SAME.

>   Nor does the use of the word "heirs" in the provision of such
>   deed or contract defined as such provision is by the subsequent
>   clause of the contract, reserve to · such heirs for whom the wife
>   had not prior to her death provided by deed, will or grant, the '
>   right to take by inheritance the land and property of the de-
>   cedent except subject to the right of the husband lawfully ac-
>   cruing to him on her death.  (p. 172).

Appeal from Circuit Court, Harrison County.

Suit by Ernest F. Bramer and others against J. Benjamin Bramer and others.  Decree for defendants, and plaintiffs appeal.                                            *Affirmed.*

*Law & McCue* and *Homer Strosnider,* for appellants.
*Charles G. Coffman,* for appellees.

MILLER, JUDGE:

The subject matter of this suit is the sum of eight thousand dollars, one-half the proceeds of the sale of the royalty oils produced by the lessees under a lease for oil and gas from a tract of land in Harrison County, made August 31, 1905, by John H. Bramer and Mary E., his wife, lessors, to William O'Harrow, lessee, said tract being the property of the wife acquired by her during coverture by deed of August 6, 1894, executed by James Monroe and others, and containing one hundred and eighty acres, said money now being in the hands of Swartz and Strosnider, receivers in another suit.

Plaintiffs in this suit are children and heirs at law of Mary E. Bramer, now deceased, by John H. Bramer, also deceased, and the defendants are J. Benjamin Bramer and others, children and heirs at law of John H. Bramer by a former wife, and Emily S. Bramer, the third and surviving wife of said John H. Bramer, and one John W. Groves, claimant of one-third of said money by assignment in writing from the said Emily S. Bramer, representing her alleged one-third interest in said money as the widow of her deceased husband.

The royalty oils in question were produced from said land after the death of said Mary E. Bramer, which occurred June 26, 1908, and before the death of the said John H. Bramer, occurring in July, 1913.  The record shows that

although the first well on said land was practically completed before the death of the said Mary E. Bramer, but abandoned because of the loss of the tools therein, no oil was produced from it, nor from any of the wells drilled thereon until after her death.

The basis of the plaintiffs' claims to the exclusive right to said funds, besides their rights as the only heirs at law of Mary E. Bramer, who died intestate, is the antenuptial deed or contract entered into between their mother and father as follows: "This Deed made this third day of July 1866, between John H. Bramer of the first part and Mary Kile of the second part.

"Witnesseth: that whereas a marriage is shortly to be solemnized between the said parties hereto, and whereas the said party of the second part is possessed of considerable estate both real and personal consisting of household furniture money choses in action and land, it is hereby agreed between the said parties that said party of the second part shall after said marriage hold and enjoy her said estate hereinbefore named to be her sole and separate use, and it is further agreed that the said party of the second part, her heirs and assigns shall have full power to sell, exchange, invest or dispose of by will or otherwise, her estate aforesaid or any other estate that she may acquire in her own right by descent or otherwise, to the intent that the aforesaid estate may not be at the disposal of or subject to the control of debts, forfeitures or engagements of the said party of the first part, her intended husband.

"Witness the following signatures and seals.

John H. Bremer    (seal)<br>
Mary Kile        (seal)"

The position of the plaintiffs is that by the plain provisions of said instrument, or by necessary implication therefrom, the said John H. Bramer, in consideration of marriage, which constituted a good consideration, not only thereby settled upon their mother Mary E. Bramer all her property then owned or therafter to be acquired by her in any manner as and for her sole and separate estate and use, with right in her to sell, exchange or dispose thereof by will, deed or otherwise,

and with like power thereby reserved in her heirs after her death, but also thereby released and relinquished all his interests therein, cutting off and completely barring him or his estate from all marital or other rights, including any estate by the curtesy in any of the lands or personal property of the said Mary E. Bramer.

The position of the defendants, especially of the appellee John W. Groves, the only one of the appellees appearing in this court, is that the only effect of said deed of settlement, executed as it was before our statute creating separate estates of married women in lands and personal property, was to convert Mrs. Bramer's common-law estate into a separate estate in equity, so that she might thereby as the deed in terms provides, "hold and enjoy her said estate * * * to her sole and separate use", and that she might thereby be empowered to sell, exchange, invest or dispose of the same by will or otherwise, but to the intent only that said estate might not, as at common law, be at the disposal of or subject to his control or liable for the debts, forfeitures or engagements of the said John H. Bramer.

Apropos to the disposition of the main issues, we pause to observe that it is well settled law in this State and elsewhere that mines opened under a lease executed prior to the death of the lessor giving power and authority to enter, mine and remove the mineral products subject to rents and royalties reserved, will be considered open mines at the time of the lessor's death, though then not actually opened, so far as the right of the wife to dower or the husband to curtesy in such royalties is concerned. *Alderson's Adm'r.* v. *Alderson,* 46 W. Va. 242, and authorities cited.

On the main propositions contended for by the parties, the law now is and for many years has been well settled in this State and in Virginia that a husband and wife in consideration of marriage may, by antenuptial contract in clear and unequivocal terms or by terms from which it must necessarily be implied, release and relinquish all claim, title and interest in each other's property that might otherwise accrue to them by their expected marriage, and in their right to take by inheritance, or to claim or acquire on the death of the one

any right or interest in the property of the other, by reason of such marriage, and that this as respects the rights of the wife might have been done as well before as since the enactment of our statute creating separate estates of married women. *Coatney* v. *Hopkins,* 14 W. Va. 339; *Beard* v. *Beard,* 22 W. Va. 130; *Hinkle* v. *Hinkle,* 34 W. Va. 142. These cases review the earlier Virginia cases on the subject, among which to be specifically mentioned are the cases of *Pickett et ux.* v. *Chilton,* 5 Munf. 467; *Charles* v. *Charles,* 8 Gratt. 486; *Mitchell* v. *Moore,* 16 Gratt. 275. The principles of these cases are those generally followed in other jurisdictions and are traceable back into the English decisions and text writers. Kelly's Contracts of Married Women, p. 2 et seq. So it becomes unnecessary for the purposes of the present case to again review these authorities. We may content ourselves by making application of them to the case here presented.

But the principle of some of the decisions cited, most potently urged by appellees' counsel in support of the decree now before us for review, is that neither the husband nor wife should ever be deprived of his or her marital rights in the property of the other to a greater extent than may be necessary to give effect to the plain words of the contract or the manifest and clear intention of the parties. *Coatney* v. *Hopkins, Beard* v. *Beard,* and *Hinkle* v. *Hinkle, supra.*

In the light of these decisions what is the proper construction of the contract before us? It is said by high authority that the rules of construction governing other contracts apply in construing antenuptial contracts, namely, that the entire instrument, together with its general scope and purpose, should be considered and given effect according to the intention of the parties as shown by the language used. *Collins* v. *Phillips,* 259 Ill. 405. And this is the rule followed in *Coatney* v. *Hopkins, supra.* In observance of this rule it is necessary to read the contract in the light of the then existing law. At the time of the contract our present statute, chapter 66 of the Code, creating separate estates of married women, effective April 1, 1869, had not been enacted. Without some deed restraining the husband, his rights in his

wife's property were as at common law. We think it plainly
manifest from the terms of the contract that the only pur-
pose thereof was to settle upon Mrs. Bramer a separate estate
in all the real and personal property of which the contract
recites she was then possessed, for the provision is that after
the marriage she should ''hold and enjoy her said estate
\* \* \* to her sole and separate use'', with power reserved
in herself, her heirs and assigns thereafter by will, deed or
otherwise to sell, exchange, invest or dispose therof or any
other estate she might therafter acquire in her own right by
descent or otherwise. We observe there is not a word in this
contract in terms releasing or relinquishing the right of the
other spouse in the event of the wife's death without having
exercised any of the powers so reserved, unless it is to be
implied from the use of the word ''heirs'', which we will
consider later. Bramer did not in terms release or relinquish
his right of curtesy, attaching at common law, after issue
born alive, or now by statute without such issue, upon the
death of the wife. Sec. 15, ch. 65, Code. In *Pickett et ux. v.
Chilton, supra,* involving a deed of settlement in a trustee
of the wife's estate, containing substantially the same pro-
visions as the deed we have here, with no provisions condi-
tioned on the husband surviving the wife and her failure to
make any appointment, it was held that the husband was
entitled to the property as her administrator and that he
was not compellable to make distribution to her children by
a former husband. In *Mitchell* v. *Moore, supra,* decided in
1861, the provisions of the contract were similar to those we
are dealing with here, and it was decided that as the deed
did not dispose of the estate in the event of the failure of
the wife to execute any of the powers reserved, the husband
surviving her was entitled to her personal property. In
*Beard* v. *Beard, supra,* the language of the deed, applicable
to both parties, was, ''relinquish all claim, title or interest in
each other's property that might vest in them under the law
by reason of their expected marriage'', and it was decided
that the wife dying intestate and without decendants, the
husband was entitled to the whole of her personal estate to
the exclusion of her next of kin. In *Hinkle* v. *Hinkle, supra,*

the wife by the antenuptial contract had agreed to waive and relinquish all right, title and interest in and to any part of the estate personal or real, or the proceeds of the sale of either or both, of which her intended husband might become possessed or acquire, and thereby bound herself never to claim or demand at law or otherwise, as she might otherwise be entitled to do, any part of his property other than that which he might thereafter give her by deed, gift or will, and that he might sell and convey it without her joining in the deed. It was held that this contract neither in express terms nor by necessary implication cut off her right of dower should she survive him, because not plainly so provided or necessarily implied. The other cases cited furnish other illustrations of the application of this principle. We decided in *Depue* v. *Miller,* 65 W. Va. 120, contrary to some prior Virginia decisions, that a husband had curtesy after the death of the wife in lands which he had voluntarily settled upon her, where he did not in express terms or by plain implication relinquish such right in the instrument of conveyance.

But was the use of the word "heirs" in the contract under consideration to in any way limit the rights of the husband beyond those conferred on the wife? We do not think so. This was a general term, and without the exercise by her during her life of the power of appointment by will or deed, it was not intended to reserve in the heirs any more than to her assigns the right on her death to cut off the right of curtesy or inheritance given the husband by law. Moreover, we think that all that preceded was intended to be defined by the last clause in the instrument, namely, "to the intent that the aforesaid estate may not be at the disposal of or subject to the control of debts, forfeitures or engagements of the said party of the first part." To preserve and secure to Mrs. Bramer a separate estate in her property was plainly the only intention of the parties. There is not in the instrument any word manifesting an intention to cut Bramer out of his curtesy, or his inheritance in the event he should survive her. The parties were both comparatively young, he thirty-five, she twenty-five years of age. They evidently contemplated children, and the plaintiffs are her children by

him. With the burden which was likely to fall upon the hus-band in the event of her death, to support and maintain the children, the parties did not likely intend that he should be cut out of these marital rights. At all events they use no words in their contract which manifested such intention, with-out which, the authorities say, he should not be deprived of his right as survivor.

We have considered the cross-assignments of error of ap pellee Grove and find no merit therein. His rights as assignee of Emily S. Bramer, the widow, can only be secured through proper administration of the estate of John H. Bramer, if not also of the estate of Mary E. Bramer. In advance of proper administration he was not entitled to a decree for the money claimed by him by assignment of Emily S. Bramer.

Our conclusion is to affirm the decree.

*Affirmed.*