# CHARLESTON.

MARY G. B. DEHART *v.* HERMAN K. DEHART *et als.*

(No. 6728)

Submitted September 9, 1930.   Decided September 16, 1930.

*Alexander Falconer,* for appellant.
*W. M. La Fon,* for appellees.

LIVELY, PRESIDENT:

The bill of plaintiff below, appellant here, is against the heirs and distributees of her deceased husband, Herman K.

Dehart, for assignment of dower in the lands of which he died seized. Answers were filed which set up two grounds of estoppel against said claim for dower. The first was that she had voluntarily left her husband without cause such as would have entitled her to a divorce from the bonds of matrimony, or from bed and board, and without just cause and of her own free will was living separate and apart from him at the time of his death. This is the statutory bar set out in chapter 65, section 7, Code. The other ground was that by antenuptial agreement she had barred her right to dower and any interest as distributee in the personal estate. Plaintiff replied specially to this last alleged bar averring therein that the husband in his lifetime had repudiated the agreement and had refused to perform his part thereof and she had never received in any manner or form any benefits thereunder. The parties went to proof under the issues thus made, and upon final hearing, the court being of opinion that plaintiff was not entitled to the relief prayed, dismissed her bill; from which dismissal decree, this appeal is prosecuted.

The evidence is almost entirely on the question of whether she voluntarily left her husband without sufficient cause, of her own free will, and was living separate and apart from him at the time of his death. The evidence is quite meager as to the second ground of defense, namely, the antenuptial agreement. The agreement is set up as an exhibit in the answer, and in plaintiff's deposition, she files the original as a part of her evidence, in which evidence she states that the agreement was not complied with except in part. She says that her husband turned over to her the iron gray mare, mentioned in the agreement, for which she gave him a credit of $96.00, and that very little, if anything else, was paid. The agreement is not criticized by her in any respect, except that it was only partly performed by the husband during his life. Plaintiff was 34 years of age and her husband about 72 years of age at the time of the marriage. The agreement was entered into a few days before the marriage in 1915; and the substance of it is that in consideration of the marriage and other valuable consideration therein mentioned that he had agreed to give to

his intended wife as soon as they married one iron gray mare and agreed to pay to her $800.00 in yearly payments of $150.00 for five years and the remaining sum of $50.00 six years after marriage when due if demanded, but if not demanded no part should bear interest, all intended by him and accepted by her in lieu of any and all dower interest in any real estate owned by him at the time of his death, and in lieu of any and all distributive share or interest in the personal property; and it was further agreed that in the event of his death before the money or any part of the same was paid, that the remaining part unpaid should be paid out of his estate. Whether the chancellor found that she was barred of dower by this agreement, or whether she was barred by the alleged desertion and living apart from him at the time of his death, cannot be ascertained from the decree, which, as above set out, simply finds that she was not entitled to the relief prayed for, and dismissed the bill.

If plaintiff be barred from asserting dower in the land by this antenuptial agreement, then the evidence taken on the question of her desertion of her husband is quite beside the mark; for if she had contracted away her dower by the antenuptial settlement, then she would have no dower interest in the land which could be forfeited by her desertion of him. She left him after she had lived with him for about ten years, about the year 1925, and he died in about one year after she left.

It is quite well established that a man and his intended wife by antenuptial agreement may vary or wholly waive the rights of property which would otherwise result from the marriage. *Faulkner* v. *Faulkner's Executors*, 3 Leigh 255; *Beard* v. *Beard*, 22 W. Va., 130; *Bramer* v. *Bramer*, 84 W. Va. 168. The courts scrutinize an antenuptial agreement to ascertain if it be fair in its provisions for the wife, and that she entered into it with full knowledge of the fact of her right, and without the exercise of undue pressure or influence upon her. No criticism of this settlement is made in that regard; it is said to be abrogated only because it was not fully complied with by the husband in his lifetime. We do not think that because he did not fully pay to her the $800.00 during his life that the

agreement became null and void; for the agreement on its face contemplates that he might die without the sums having been paid and that what remained, if any, should be a charge against his estate. Clearly, she has a claim against the estate. It was not an executory contract at the time of his death, as was the agreement in the case of *Zachmann* v. *Zachmann,* 201 Ill. 380, 66 N. E. 256, cited by appellant, because in the instant case, a part of the consideration was turned over to her, namely, the mare, and very little, if any, paid her on the other part of the agreement. She could not rescind that contract after receiving benefits under it. By this agreement, the parties contemplated his death before payment, and they agreed that what remained unpaid, if any, or if no part was paid, then that the sum should be paid out of his estate. Under the plain terms of this contract, she must look to the estate for the amount unpaid under this contract, whatever that amount may be. The contract bars her of dower. *Findley's Executors* v. *Findley,* 11 Gratt. (Va.) 434; *Hinkle* v. *Hinkle,* 34 W. Va. 142, 149.

In the *Zachmann* case an effort was made to show that the dower claimant had received a portion of the sum agreed to be paid her, but the court found that no such sum had been paid her by the husband, and therefore the contract was wholly executory. Mrs. Dehart expressly agreed to payment out of her husband's estate for the amount remaining unpaid at his death. In *Hastings* v. *Dickinson,* 7 Mass. 153, cited by appellant, the agreement provided for an annuity out of the husband's estate in lieu of dower; but the husband became insolvent, the annuity failed for that reason, thus working a failure of consideration for the release of dower. The wife had covenanted to release dower on consideration of the performance of the provision made for her in lieu of dower. There is no suggestion, in the instant case, of insolvency of the husband's estate.

As above suggested, we do not know on which ground of defense the chancellor concluded that plaintiff was not entitled to relief, and dismissed her bill. It may be, having concluded that the antenuptial settlement barred her of dower

and the bill being for dower only, the bill was dismissed. Should she be allowed to assert her money claim against the estate in this suit? While the bill is for dower only, the facts developed, as above set out, show that plaintiff has a claim against the estate. Should she have filed her bill for dower, setting up the execution of this contract and charging that it had been violated and was of no force, but in the event that the court found that the marriage settlement was a bar to her dower she had prayed for alternative relief in the assertion of her claim under the marriage contract, the bill would have been entertained. The controversy here is primarily concerning her dower, and the facts developed show a money claim by reason of her marriage and concerning her dower. It is reasonably shown that the husband had very little, if any, personal estate at the time of his death. She could maintain a creditor's suit for the assertion of her claim under the contract and pray for a sale of the land in satisfaction of her debt. We can see no necessity in requiring her to institute and prosecute another suit when the assertion of her claim is germane to the suit now instituted and can be conveniently adjudicated therein. The facts have developed a money claim in favor of plaintiff against the estate, contracted in discharge of her dower and germane to the suit, but the pleadings for its assertion are defective and insufficient, and the evidence to support it is woefully incomplete. No attempt was made to fully develop the evidence in support of the claim; perhaps for the reason that the pleadings did not permit it. Generally, "where the real merits sought to be determined are not fully presented, either on account of defects in the pleadings or evidence, with such fullness as to enable the court to decide the real controversy, the lower court should refuse to decree on the merits until such defects are remedied; and in a plain case, the appellate court will for that reason alone reverse the decree and remand the cause for further proceedings." *Jacobs* v. *Jacobs,* 100 W. Va. 585, (Pt. 5 Syl.)

The decree will be set aside and annulled, and the cause remanded for amendment of the bill, or such other appropriate

proceedings as counsel may elect to invoke for the assertion of her money claim against the estate.

*Reversed and remanded.*