## The People of the State of Illinois ex rel. Frances Hood, Plaintiff in Error, v. William J. Gleason, Defendant in Error.

## Gen. No. 24,038.

1. BASTARDS, § 7*—*when bastardy action may be maintained.* A woman, married after conception and the filing of a complaint, can maintain an action for bastardy against the putative father of the bastard child.

2. BASTARDS, § 7*—*when child is not legitimate.* A child, a bastard at conception, is not legitimate at birth because of the marriage of the mother to a man who was not the cause of her pregnancy.

3. BASTARDS, § 2*—*when presumption of legitimacy does not obtain.* While the legal presumption obtains that every child born in wedlock is legitimate, still such presumption is rebuttable when the proof conclusively shows that the husband had no power of procreation or that the circumstances were such as to render it impossible that he could be the father of the child, and such child will be adjudged to be a bastard.

4. BASTARDS, § 7*—*when child is a bastard.* A child of a married woman begotten by one who is not the husband of the mother is a bastard.

5. BASTARDS, § 33*—*what is question of fact.* The true test in determining whether a child born in lawful wedlock is legitimate is whether the husband of the woman who gives birth to the child is its father and this is a question of fact.

6. BASTARDS, § 7*—*when child of married woman is a bastard.* Where a woman is pregnant with a child, born five days after her marriage, which was conceived several months before she met her husband, making it impossible for him to be the father of the child, such child is, notwithstanding the marriage of the mother with a man not its father, a bastard.

7. BASTARDS, § 3*—*when husband under no duty to contribute to support of wife's bastard.* A husband is under no duty to support or to contribute to the support of his wife's bastard child, notwithstanding the fact that the child was born five days after his marriage to the mother.

Error to the Municipal Court of Chicago; the Hon. HOWARD

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

HAYES, Judge, presiding. Heard in this court at the March term, 1918. Reversed and remanded. Opinion filed June 10, 1918.

RUSH B. JOHNSON, for plaintiff in error.

JAMES W. MRAZ, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Defendant was proceeded against under the Bastardy Act (J. & A. ¶ 703 *et seq.*). The relatrix filed her complaint May 28, 1917, alleging that she was an unmarried woman pregnant with child, which child would by law be deemed a bastard, and that the defendant, William J. Gleason, was the father of that child. A warrant was issued and defendant arrested thereunder, held to bail, and a jury trial had.

Sufficient facts appear from the evidence of the prosecution which, uncontradicted as they are, convict defendant of being responsible for the pregnancy of relatrix and the subsequent birth of her child. At the conclusion of relatrix's testimony the court instructed a verdict of not guilty on the admitted fact that at the time of the birth of her child relatrix was a married woman.

It appears from the evidence that the illicit relationship between relatrix and defendant began June 5, 1916, and continued until the latter part of May or the first part of June, 1917. Relatrix discovered she was pregnant in March, 1917, and her child was born December 8, 1917. Relatrix was December 3, 1917, five days prior to the birth of her child, married to one Henry Weland, whom she met for the first time August 8, 1917, before which time she had never seen him. The child, a boy, was living at the time of the trial.

The important question presented for our decision is, Can a woman, married after conception and the filing of the complaint, maintain an action for bastardy

against the putative father of such child? In other words, can the putative father of a bastard child escape his statutory responsibility when the mother of such bastard child marries subsequent to pregnancy and the filing of her complaint, but prior to such child's birth?

This is a case of first impression, as the precise point here involved has not been directly passed upon by a court of review in this jurisdiction. Defendant insists, however, that *People ex rel. Wilmers v. Volksdorf*, 112 Ill. 292, is conclusive against relatrix. We do not so view that decision. There is, on the contrary, much reasoning in the opinion which tends to support her case. Moreover, if it can be said the opinion holds that the true construction of the Bastardy Statute is that the mother must be unmarried at the time of the birth of the child, then, as that question was not involved in the case, it is clearly *obiter dicta*. In the *Volksdorf* case, *supra*, the child was born before the marriage of the mother, but the complaint under the act was filed after the birth of the child and after the marriage of the mother. The relatrix was held to be entitled to invoke the act against the putative father notwithstanding her subsequent marriage. In the *Volksdorf* case, *supra*, the court said:

"It is contended by appellee that the mother of a bastard child must be an unmarried woman at the time she makes complaint, while appellant claims that the word 'unmarried,' in the section, is to be referred to the pregnancy or delivery of the mother. The statute authorizes the making of the complaint when a single woman is pregnant with child. In that case the complainant must be 'unmarried' at the time of making the complaint. * * * The marriage of the mother of an illegitimate child, after delivery, to one not the father, cannot affect the status of such child, and her husband will not be liable for its support."

This reasoning when applied to the facts of this case supports, we think, the contention that marriage of the

relatrix after pregnancy and before delivery does not deprive her of the right to pursue her remedy under the Bastardy Act against the putative father after the child is born.

A child, a bastard at conception, is not legitimate at birth because of the marriage of the mother to a man who was not the cause of her pregnancy. Nothing short of the marriage of the mother and the father of a child conceived as a bastard will remove the stigma of its being base born. While the legal presumption obtains that every child born in wedlock is legitimate, still it is a presumption which is rebuttable when the proof conclusively shows that the husband had no power of procreation or that the circumstances were such as to render it impossible that he could be the father of the child, and such child will be adjudged to be a bastard. *Powell v. State ex rel. Fowler,* 84 Ohio St. 165. A child of a married woman begotten by one who is not the husband of the mother is a bastard. *McLoud v. State,* 122 Ga. 393. .In *Wilson v. Babb,* 18 S. C. 59, a finding that a child born four and one-half months after marriage was illegitimate was sustained, and it was there held that ''While a legitimate child is one born in lawful wedlock, and a bastard is one begotten and born out of lawful wedlock, yet it does not follow that every child born in lawful wedlock is legitimate, nor does it require one to be both begotten and born out of lawful wedlock to be a bastard. The true test is whether the husband of the woman who gives birth to the child is its father; and this must, of necessity, in every case, be a question of fact.'' We think the foregoing quotation is an accurate statement of the law. Applying it to the instant case, we find that relatrix was pregnant with the child, born five days after her marriage to Weland, several months before she and her husband had ever seen each other, making it impossible for him to be the father of that child, which child is therefore, notwithstanding the

marriage of his mother with a man who is not his father, a bastard; and in the present state of the proofs defendant is the putative father of that child. As between the State, the husband of relatrix and the defendant, the Bastardy Act gives relatrix a remedy against defendant for the support of the child to the extent and in the manner provided by that act; and the law does not impose upon the husband any duty to support or to contribute to the support of his wife's bastard child, notwithstanding the fact that the child was born five days after his marriage to the relatrix. *Willetts v. Jeffries,* 5 Kan. 470, supports this statement. The Kansas Bastardy Statute is in essential particulars similar to our own. In the *Willetts* case, *supra,* the court said:

"The object of the statute is to protect the innocent child from destitution, and society from the burden of its support. A moral obligation rests upon every father (as well as every mother) to support his own offspring, and it would be strange if the statute can be so construed as to relieve any father, and particularly this class of fathers, from this moral obligation. A married woman gives birth to a bastard child begotten in fornication or adultery. She is divorced from her husband, perhaps for that cause alone. She is thrown upon society, destitute, disgraced and ruined, and shall her guilty paramour go free, simply because she was a married woman when the child was born? Would it not be more in consonance with the dictates of natural justice for the partner of her guilt to be required to contribute his share towards the support of their innocent offspring? It would be strange if such is not the law. Strange, indeed, if this class of bastards, though small, is to be thrown upon society entirely destitute and unprovided for, and the guilty father go free."

As it is clear that at the time of the filing of the complaint relatrix had a right to invoke the act, her subsequent marriage a few days before her bastard child was born does not rob her of the right to pursue

such remedy to final judgment.    Under the circumstances of this case, relatrix's marriage subsequent to the filing of her complaint did not work an abatement of the proceeding.

The judgment of the Municipal Court is reversed, and as defendant was not on the trial afforded the opportunity of putting in his defense, if any he has, the cause is remanded for a new trial in accord with the views here expressed.

*Reversed and remanded.*