People of State of Illinois, Defendant in Error, v. Clarence Powers, Plaintiff in Error.

Gen. No. 44,794.

Opinion filed March 14, 1950. Rehearing denied March 29, 1950. Released for publication April 3, 1950.

EDGAR A. JONAS and FREDERICK C. JONAS, both of Chicago, for plaintiff in error.

JOHN S. BOYLE, State's Attorney, of Chicago, for defendant in error; JOHN T. GALLAGHER and FRANCIS McGUIRE, Assistant State's Attorneys, both of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This writ of error is prosecuted by defendant, Clarence Powers, to reverse a judgment of the municipal court of Chicago which adjudged him guilty of the criminal offense of nonsupport of child, pursuant to information filed under ch. 68, par. 24, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 37.002], and ordered him to contribute $15 each week for a period of one year for such support. Defendant entered a plea of not guilty and, having waived a jury, the case was tried by the court without a jury.

Defendant was married to Grace Powers on August 30, 1941, and was still married to her on August 10, 1948, the date the child in question was born. On April 26, 1944, Grace Powers was adjudged to be mentally ill and committed to the State Hospital at Manteno. She was conditionally released on October 16, 1944; was absolutely discharged on June 24, 1947; recommitted on December 30, 1947, and conditionally discharged on

202

July 28, 1948. Defendant lived with his wife up to the time of her first commitment and resumed living with her when she was conditionally discharged on October 16, 1944, until, according to his testimony, June 20, 1946, when they were separated. At that time, they were living at 3104 Southport avenue, and according to the testimony of defendant, he moved out when his wife's mother and sister moved in, and took up his residence after that in the 2100 block on Lincoln avenue, until March 24, 1947, when he moved to the Montrose Beach Hotel. The child in question was born to Grace Powers on August 10, 1948.

Defendant testified that he did not live with his wife during the months of October, November, and December, 1947, which months covered the possible period of conception. Defendant further testified that from the date of separation, June 20, 1946, until his wife was recommitted to Manteno on December 30, 1947, his wife came to his place of employment once a week to collect money from him for her support; that ''I saw her sometimes in the months of August, September, October, November and December, 1947, sometimes I did not . . . I would leave the money in the office and she would come and get it. . . . During those months I saw her once or twice in the five months . . . I would see her at the place of business where I worked . . . she came for the purpose of collecting the money, that is all''; and that he did not have sexual intercourse with his wife during said months or at said times.

At the time of the trial, defendant's wife was not restored to reason and she did not testify. Of course, the child, the real party in interest, was likewise unable to do anything in his own behalf.

█ Defendant admits that there is a presumption that he is the father of the child, but asserts that this presumption is a rebuttable one and that the evidence is sufficient to meet it. Defendant cites *Robinson v.*

*Ruprecht,* 191 Ill. 424, and *People v. Gleason,* 211 Ill. App. 380, in support of this proposition. There is no doubt that the presumption in question is not absolutely conclusive. In the law, there are presumptions which are conclusive, some which disappear on the presentation of any evidence to the contrary and others that can only be overcome by strong and compelling evidence. The presumption in question still has great force and vigor, even though the practically conclusive character it had at common law has been somewhat abated. It had its origin in the need for family stability and the protection of helpless infants, who by such proceedings as this can be tarred forever with the stigma of illegitimacy.

██ Although the facts in *Orthwein v. Thomas,* 127 Ill. 554, are different from those in this case, the public policy of this State is clearly stated in the following quotation:

"The presumption and charity of the law are in his [the child's] favor, and those who wish to bastardize him must make out the fact by clear and irrefragable proof. The presumption of law is not lightly to be repelled. It is not to be lightly broken in upon, or shaken by a mere balance of probabilities. The evidence for repelling it must be strong, satisfactory and conclusive."

The *Robinson* case, *supra,* cited by defendant, was a civil suit wherein it appears that Johannah was living out of wedlock with Curtis E. Robinson, Sr., and in such a state a child was born. Johannah believed that her husband Gottlieb was dead at the time of her relations with Curtis. Gottlieb was in fact not dead but was residing in another state. Both Curtis and Johannah admitted the child was theirs. Upon evidence such as this, the presumption that Gottlieb, the living husband of Johannah, was the father of the child, was satisfactorily met.

In the *Gleason* case, *supra,* cited by defendant, the husband of the wife married her five days before birth of the child in question and had known the mother but a short time before the marriage. At the time of possible conception, the husband and mother were total strangers. The wife in that case brought bastardy proceedings against Gleason, the alleged father of the child, and he defended on the ground that because she was married at the time of the birth of the child, she could not bring such proceedings against him. The court held otherwise. Needless to say, the presumption arising out of marriage as to the paternity of the child was satisfactorily met by the evidence. The evidence in both of these cases was conclusive and left no room for doubt.

 In this case, defendant by his own breath would bastardize this child and have the court find his wife guilty of infidelity. Even in an uncontested divorce case in this jurisdiction, where the social consequences are less serious, he would be required by the court to produce a corroborative witness. If we accept his contention and further attenuate the presumption of paternity by holding that such unsupported testimony is sufficient, the social consequences can only be to add further to the growing instability and disintegration of family life.

Defendant on the hearing of the case rested his defense entirely on the proposition that he would prove the child was not his. Defendant's attorney at the opening of the trial stated to the court: "My only defense to this is the testimony will show that this is not his child. He has not lived with the wife since the parole." Later, he stated to the court: "That is my only defense," and at the conclusion of his direct testimony, the defendant was asked this question: "Q. You contend this is not your child? A. I do. Mr. Jonas: That is our only defense."

In the foregoing, both the court and the state's attorney must certainly have understood that the defendant was making no point whatever on the question of the destitution of the child. In this respect, the defendant was well advised because the court merely required defendant to pay for the support of the child. In this court, however, defendant has also raised the defense of failure on the part of the State to prove the child was destitute.

It appears from the record that whatever payments were made by the defendant were made to the wife's sister. It is further clear from the record that these payments were intended by defendant to be payments for the wife, and that the sister, with whom the child was living, was a working girl and used some of the money for both the wife and the child. In addition to the child, the child's mother when out of the asylum and a 67-year-old grandmother live with the sister. It seems clear from the record that the only working member of the group is the sister. This is obviously a sufficient case to have established the destitution of the child.

Defendant argues that his guilt was not proven beyond a reasonable doubt. This, of course, is definitely related to the weight which the court gives to the presumption of paternity. In the light of what we have already said, we believe further discussion of this point is unnecessary.

For the reasons stated herein judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.