In the Matter of the Petition of Constantine G. Lewis, and Norma Rose Lewis, his Wife, Appellants, v. To Adopt Baby Girl Bart, a Minor. Frances Lo-Chirco, and Joseph LoChirco, Antoinette Bart, also Known as Frances Bartolotta, Appellees.

Gen. No. 46,030.

Opinion filed May 28, 1953. Released for publication June 24, 1953.

JESSE H. BROWN, of Chicago, for appellants.

FISHER, HASSEN & FISHER, of Chicago, for appellees; JOSEPH FISHER, and SAMUEL R. HASSEN, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an adoption proceeding in which the trial court denied the prayer for adoption and ordered custody of the infant child turned over to defendants who were found to be the natural parents. Plaintiffs have appealed.

Defendants were married November 20, 1950. They separated June 30, 1951. On July 9, 1951 the wife sued for divorce on the ground of cruelty and October 19, 1951 a decree for divorce was entered in her favor. February 19, 1952 the defendant-mother gave birth to a baby girl at the Southtown Hospital in Chicago. The birth certificate indicated the father was Frank Bart, a laborer at Wilson & Company, and the mother Antoinette Theresa Bart. The certificate was signed by the defendant-mother, using the name Antoinette Bart.

February 21, 1952 defendant-mother signed a release to the hospital, using the name Antoinette Bart, stating she did not wish to take the child from the hospital with her, releasing "claims" to the child and "wish[ing] adoption proceedings to take place." February 28, 1952, using the name of Antoinette Bart, she consented to the adoption of the child by the plaintiffs, and using

the same name signed an appearance, waiver of summons, consent to an immediate hearing and to the entrance of an adoption decree without further notice. March 1, 1952 the defendant-mother signed a religious consent.

Defendants were remarried May 15, 1952. July 9, 1952 they filed a petition for *habeas corpus* against plaintiffs for production of the child, and the same day plaintiffs filed their petition for adoption. On June 24, 1952 defendants wrote to plaintiffs and the Southtown Hospital, among others, revoking the consent and demanding return of the child.

The issues presented by the petition and the answer of the defendants were whether the defendants had abandoned their child, and whether the petition sufficiently complied with the requirements of the Adoption Act. (Chap. 4, Ill. Rev. Stat.) The decree found that the Act had not been complied with; that the defendants did not abandon the child; and that the consent executed by the defendant-mother had been revoked by her prior to the entry of the decree. The plaintiffs contend that the trial court abused its discretion by its finding that the consent of the defendant-mother had been revoked and that the findings as to the abandonment and that defendant Joseph LoChirco is the father are against the manifest weight of the evidence. They also contend that the trial court erred in excluding evidence offered in behalf of plaintiffs.

With respect to the finding that the Adoption Act had not been complied with, plaintiffs concede that if Joseph LoChirco is the father of the child the judgment must be affirmed because he did not consent to the adoption and there is no evidence that he abandoned the child or concurred in an abandonment, if there was abandonment. (Chap. 4, Art. 3, Sec. 3—7, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 19.012(13)].)

 Plaintiffs also concede that the baby was born after a full period of pregnancy and that conception took place in May, 1951. Since defendants were living as man and wife at the time of conception the presumption is that the child is legitimate and that the defendant-father is the natural father. *Robinson v. Ruprecht,* 191 Ill. 424, 432. This presumption is not one that vanishes when evidence to the contrary appears. Though it is rebuttable, it can be overcome only by strong and compelling evidence. *People v. Powers,* 340 Ill. App. 201. We must determine the question whether the finding of paternity is against the manifest weight of evidence in the light of the rules announced in the foregoing cases.

██ The presumption of paternity in this case is strengthened by the testimony of the defendant-mother that she lived with her husband until June 30, 1951; that she had no sexual intercourse before marriage and none with any man but her husband after her marriage; and that during her marriage until the time of the separation she had sexual intercourse with her husband. Defendant-husband testified that before the separation from defendant-mother he had sexual intercourse with the wife in April, May and June, 1951.

To overcome the presumption and this evidence plaintiffs point to the testimony of defendant-mother, as well as that of other plaintiffs' witnesses and documentary proof. In substance this evidence is that when defendant-mother sued for a divorce, July 9, 1951, she made no allegation with respect to her pregnancy; that she alleged cruelty and her husband testified in the instant proceeding he had struck her on the dates alleged; that in the conversations with her attorney at that time, after the divorce complaint was filed and until August 15, 1951 she denied being pregnant; that she first learned of her pregnancy in September, 1951;

that despite this, at the time of the hearing in October following, she denied that she was bearing a child; that during the events leading to the divorce, though she had seen her husband at conferences, she did not inform him of her pregnancy; that she told only her mother of her condition when she was five months pregnant; that she went to the Southtown Hospital about a month before the birth of the baby, used an assumed name, named a fictitious person as the father of the child and used fictitious names on the birth certificate, release and consent she executed in connection with the adoption; that she refused to describe the father of the child to the attorney for the hospital; that before, and immediately after, the birth of the child and at all times thereafter until notices of revocation of consent in June, 1952, she abided her desire to give her child up for adoption; that she has not seen the child since the birth; that defendant-mother and her mother in March, 1952 sought to get money from the attorney for the hospital; and that defendant-mother told a friend of plaintiffs that that attorney had refused to give her money and that caused her to revoke the consent.

Defendant-mother testified that her family did not approve of her marriage, because her husband had two children from a previous marriage, and she was torn between two loves; that before the separation from the husband she had attempted to visit her family and they would not see her; that she was nervous and impatient with her husband's children and that consequently would be reprimanded by him; that she left him twice and returned twice before the final separation; that she was "mixed up" before and after the separation; that she was not aware of her pregnancy because she was confused and thought it might be nervousness; that in September a doctor told her she was pregnant; that her lawyer had never asked her at that time whether she

398

was pregnant; that she did not know what to do with the baby, how to take care of it, where she was going to turn, or how to make ends meet; that she did not discuss the father with the hospital attorney or anyone; that the attorney for the hospital knew that the names given were not correct; that she did not use her right name because she did not want her husband to know about the baby at that time; that she did not give her maiden name because she did not want to hurt her family or their name; that she did not want to give the baby up, and her mother did not want her to; that she had to work to live and had no one to take care of the baby; that neither she nor her mother asked the hospital attorney for money; and that she did not tell a friend of plaintiffs that she was claiming the baby because she got no money.

■ Errors were assigned on the rulings of the trial court with respect to offers of proof going to the impeachment of defendant-mother. We think plaintiffs were not prejudiced by these rulings because the substance of the testimony contained in the offers were given by witnesses subsequent to the rulings.

■ We do not agree that the trial court should have found with plaintiffs that the presumption and the evidence in support thereof was overcome by strong and compelling evidence. We think the trial court did not err in failing to draw the inference that the conduct of the defendant-mother was wholly inconsistent with Joseph LoChirco's being the father of the child. We presume that the trial court decided that the reasons given by the defendant-mother for doing what she did were good reasons and that her conduct was not inconsistent with the legitimacy of the child. We conclude that the finding that Joseph LoChirco is the natural father of the child is not against the manifest weight of the evidence.

399

Our conclusion on this issue is decisive of this appeal. We need consider no other point raised.

For the reasons given the decree is affirmed.

*Decree affirmed.*

LEWE, P. J. and FEINBERG, J., concur.