THE PEOPLE ex rel. LOIS REPSEL, Plaintiff-Appellee, v. KENNETH KIRK, Defendant-Appellant.

(No. 70-177;

Third District—September 3, 1971.

Dixon, Devine, Ray & Morin, of Dixon, for appellant.

Edward X. Raschid, Special Assistant Attorney General, of Streator, for appellee.

PER CURIAM:

Defendant Kenneth Kirk appeals to this Court from an order of the La Salle County Circuit Court adjudging defendant to be the father of the child of relator Lois Repsel. The action was instituted pursuant to the provisions of 1969 Illinois Revised Statutes, Ch. 106¾. The question for review is whether the evidence produced in this cause sufficiently overcomes the presumption that the child was legitimate, since the relator was married to a third party at the time of the conception of the child.

Lois Repsel, the relator, testified that she first met defendant in November 1968 at Earl's Club, a tavern in Mendota, Illinois. She stated she began having sexual relations with him on or about November 18, 1968, and that such relations continued intermittently thereafter as frequently as every other weekend through February 1969. These acts occurred on various occasions at the Ellis and Faber Hotels in Mendota, at relator's apartment at 2303 Main Street in Peru, Illinois, and at the Daniels Motel in La Salle, Illinois. She stated that she and defendant engaged in sexual relations "15 or 20 times". Relator stated also that during this period she did not have sexual intercourse with anyone else. She further testified that at some time after defendant became aware of her pregnancy he came to her residence at that time (at the Igloo Trailer Court in Peru) and told her, "It wasn't all his fault, it was as much mine as it was his, and he then wanted to know what I wanted him to do about it." She stated that she said nothing in response to his inquiry.

A male child was born to relator on August 11, 1969. At the time of the conception of the child in question, relator was married to William Repsel. The couple had been married on May 9, 1967, and were divorced on February 27, 1969. As indicated, the child was born on August 11, 1969. Relator testified that she and her husband had not engaged in sexual intercourse with each other since their separation, which took place "over a year" prior to the time she later became pregnant. Although the husband, William Repsel, did not testify at the trial, it was stipulated that if he were called he would state that he did not have sexual intercourse with relator at any time during the month of November 1968, or subsequent thereto. The record discloses, however, that Mr. Repsel at all times material to the issues here, lived in the same city as the relator and,

as a matter of fact, worked as a bartender in the same premises where relator maintained her apartment at 2303 Main Street in Peru. It was shown that relator's apartment could be reached immediately through a door from the tavern where her husband worked. The relator and her husband saw each other on frequent occasions during their separation and relator, on occasion, would leave the elder child with her husband at his residence while she was working. Relator and William Repsel are admittedly the natural parents of a child born on October 26, 1967.

It was also disclosed in the proceedings that William Repsel, in February 1969 filed a divorce complaint charging relator with refusing to cohabit with him for the previous nine months and with going out of the home at night, frequently staying away all night without explanation. In her answer to the divorce complaint, relator denied each of the allegations. In this proceeding, relator testified that she did not know why her answer denied the allegations because, in fact, they were true. A friend of relator, Rhonda Timmons, testified that defendant came to relator's residence, then at the Igloo Trailer Court in Peru, about a month after the child was born at a time when relator was not present. Miss Timmons said that the child in question resembled defendant. She stated she overheard defendant say that he would never marry relator as relator would be chasing men. She also stated that defendant said, "It wasn't all his fault".

In the birth certificate for the child which was introduced into evidence by counsel for defendant, the certificate stated, in the space provided for the name of the father, the words "legally omitted". Relator could not explain why the certificate had been filled out in this manner.

Defendant testified that he met relator at Earl's Club in Mendota in October or November, 1968, that he danced with her a couple of times and he showed her his car. Since she stated she already had a date that night, however, defendant says he did not remain with her any longer at that time. He saw her again at Earl's Club near Christmas or New Year's Eve in 1968 at which time they had some drinks together. He stated he did not take her home that night. During February of 1969 he saw her again at Earl's Club and she invited him to a party in Peru. He went to the party which was attended by two other girls and a man, but stayed only a few minutes and then left. Defendant denied that he had ever engaged in sexual relations with relator and denied that he had ever taken her to any of the hotels or motels referred to in this opinion. In January of 1969, defendant stated he received a phone call from relator and went to her place of residence at Igloo Trailer Court, where relator there accused defendant of being the father of her unborn child, but defendant told relator that this could not be possible as they had never

had sexual relations with each other. He stated that in January or February of 1969, he received a telephone call from another girl advising him that relator was in the hospital for a T.B. test and that he was to go to the hospital also. Defendant first became aware that plaintiff was pregnant when he saw her in January or February 1969.

Defendant admitted, on cross-examination, that it was strange that a woman, with whom he was only casually acquainted, would accuse him of the paternity of her child. At the time relator asked him to come to her residence, defendant stated that he thought she merely wanted to see him again. Defendant stated that if he stayed at one of the hotels mentioned by relator he had been alone at the time. He also admitted that he had gone to relator's residence on two occasions at her request.

■■■ The issue before this Court is summarized effectively in *People ex rel. Gonzalez v. Monroe*, 43 Ill.App.2d 1, 192 N.E.2d 691, where the court says (at Page 6):

> "There is a presumption that the husband is the father of a child born to his wife and at common law this presumption was practically a conclusive one. Such presumption was conceived for the purpose of preserving family stability and protecting helpless infants from the stigma of illegitimacy. People v. Powers, 340 Ill.App. 201, 91 N.E.2d 637. This presumption is not absolutely conclusive, but it has great force and vigor and can only be overcome by clear and convincing proof. If it appears that there was no possibility of access by the husband to the wife at the time of the conception and that in the course of nature the husband could not have been the father of the child, the presumption cannot prevail. Robinson v. Ruprecht, 191 Ill. 424, 61 N.E. 631. However, the presumption and charity of the law are in the child's favor and those who wish to bastardize him must make out the fact by clear and irrefragable proof. Orthwein v. Thomas, 127 Ill. 554, 21 N.E. 430."

When we apply the principles applicable to an issue of the character before us to the instant case, we must do so through careful examination of the facts as presented in the record. The testimony of relator herself clearly establishes that at the time of conception she lived in close proximity to her husband's place of employment; in fact, in the same premises, thus affording them easy physical access to each other. She also stated that she continued seeing her husband regularly after their separation, although she denied any sexual intercourse. Relator's own testimony on this important issue must not be afforded much weight (*People ex rel. Gonzalez v. Monroe, supra,* at page 7). So far as the husband is concerned, there is only a stipulation in the record that if the husband were

called, he would testify that he and the relator had not had sexual intercourse during the month of November, 1968, or subsequent thereto. Defendant refused to stipulate, however, that relator and her husband did not, in fact, have intercourse during this period. The trial judge had no opportunity to see and hear the husband on this matter. The burden is upon the relator to establish clearly that there was no intercourse with the husband and this cannot rest solely upon the statement of the relator and the stipulation that the husband would testify that there had not not been any sexual intercourse during the significant period involved, particularly where a defendant denies having had intercourse with the relator.

As indicated in *People ex rel. Gonzalez v. Monroe, supra,* the presumption that the child is the child of the husband can only be overcome by what is described as "irrefragable proof". The court there clearly meant proof of such character that it cannot be disputed. There is no evidence that relator's husband lacked procreative power or that it was impossible for him to have fathered the child. While we might agree with the trial court's conclusion that defendant's testimony was "inherently improbable", we are, nevertheless, of the opinion that the evidence which was produced in this cause on behalf of relator falls short of the requirement of the law that the paternity be established clearly and that the proof be irrefragable that the husband could not have been the father of the child. This is particularly significant in a case such as we have before us where the defendant denies having intercourse with the relator and where there is no evidence of such intercourse other than the assertion of the relator.

Appellee in this case cites *People ex rel. Jones v. Schmidt,* 101 Ill.App. 2d 183, in support of relator's contentions. That case, which was determined in this Court, is clearly distinguishable since in that case defendant admitted intercourse at the time of conception, he bought matching wedding rings for the relator and himself, and paid relator's hospital bills. In the cause before us, defendant has denied intercourse.

■■ This being the state of the record, we do not believe that the quantum of proof which is required to overcome the presumption of legitimacy has been shown. Accordingly, we believe that the judgment of the Circuit Court of La Salle County should be reversed. For the reasons stated, such judgment is reversed.

Judgment reversed.