*In re* JOHN LEE OZMENT, a Minor.—(THE PEOPLE *ex rel.* DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner-Cross-Respondent-Appellant, *v.* RAYMOND HEATER, Defendant-Cross-Petitioner-Appellee.)

Third District    No. 77-353

Opinion filed July 17, 1978.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

James L. Hafele, P. C., and Wilbur D. Dersch, both of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the order of the circuit court of Peoria County placing the minor child, John Lee Ozment, in the custody of the cross-petitioner, Raymond Heater.

John Lee Ozment was born on February 11, 1972, five months after the marriage of Elizabeth and John Ozment. The Ozments were divorced two months later. John Lee and his mother resided in the home of Raymond Heater from April 1972 until September 1975. At that time John Lee was removed from the custody of his mother for a period of about two months; he was later returned to her.

In April 1976, the Department of Children and Family Services filed a dependency petition in the interest of the minor. Both the mother,

Elizabeth Ozment, and her former husband, John Ozment, filed appearances and consents to the entry of a dependency finding. The court found John Lee Ozment dependent and placed him under the guardianship of the Department of Children and Family Services. At that time Raymond Heater had physical custody of John Lee Ozment.

At the urging of Dennis Davis, a caseworker for the Department of Children and Family Services, Heater had been taking John Lee to the home of Mr. and Mrs. Vance, who were the prospective adoptive parents.

In September of 1976 Elizabeth Ozment and John Ozment filed consent in open court to John Lee being made the dependent ward of the State and to the appointment of a guardian with the power to consent to adoption. Two weeks later, on September 29, 1976, John Ozment petitioned the juvenile court for withdrawal of his consent to appointment of a guardian with power to consent to the adoption claiming he was not the father of the child and that Raymond Heater was the father. His affidavit as well as that of Elizabeth Ozment supported his petition. The petition was denied.

In October 1976, Heater met with Davis and told Davis that he desired to keep the minor child in his custody and guardianship and move the child to Kansas. At that time Heater claimed he was the father of John Lee Ozment. Heater then filed his cross-petition. In January 1977, the hearing commenced in juvenile court on Heater's cross-petition in which he claimed to be the father of John Lee Ozment. Heater, John Ozment, and Elizabeth Ozment testified on Heater's behalf, as did several other witnesses.

The hearing was continued for the presentation of the Department's case until February 1977.

Lois Norris, the master foster parent who interviewed Heater; Yvonne Vance, the potential adoptive parent of John Lee; and John McAtee, a Department social worker, who was present at the signing of the consent by Elizabeth and John Ozment, testified for the Department. The hearing was continued until March of 1977 when Dennis Davis testified regarding Heater's earlier denial of paternity. Heater was called under section 60.

The final hearing on the case was April 21, 1977. At that time the trial judge stated that he agreed that in the best interest of John Lee the matter should be continued for a full investigation of the proposed placement with Heater and for Heater to arrange irrevocable financial security. Pursuant to this agreement, the judge wrote to Davis requesting a comprehensive social investigation of Heater's niece who lived in Independence, Kansas, and with whom Heater intended to reside along with John Lee if the trial judge found Heater to be the natural father and also granted him custody of the child.

Davis then wrote to the Department of Social Rehabilitation Services of the State of Kansas requesting a home study. The study was made by the Kansas agency and returned to Davis in July of 1977. Pursuant to this report the trial judge entered an order on July 8, 1977, finding that Raymond Heater was the natural father of John Lee and that he was able to provide adequate support and education for the child; that John Ozment was not the natural father of John Lee; and, that it was in the best interest of John Lee that he be placed in the care, custody and control of Heater. The Department was required to deliver custody to Heater immediately.

Notice of appeal was filed and a stay of the order requested. This was denied. An emergency stay was granted by the appellate court.

Appellants argue that: (1) the finding of the trial judge was improperly based upon consideration of the best interest of the child; (2) to get this result, the trial judge made the necessary finding that Heater was the natural father of the minor, thereby obviating the necessity of reversing his prior decision denying withdrawal of the consent of John Ozment as natural father by which John Ozment consented to appointment of a guardian with right to consent to adoption of the child.

■■ There is a strong presumption in Illinois that a child born to a wife during her marriage was fathered by her husband. (*People ex rel. Repsel v. Kirk* (1971), 133 Ill. App. 2d 771, 273 N.E.2d 86; *People ex rel. Jones v. Schmitt* (1968), 101 Ill. App. 2d 183, 242 N.E.2d 275; *Zachmann v. Zachmann* (1903), 201 Ill. 380, 66 N.E. 256.) The presumption of legitimacy prevails even though the child was conceived prior to the marriage of his mother (*Zachmann v. Zachmann*).

The presumption, however, is not conclusive. (*People ex rel. Jones v. Schmitt.*) It may be rebutted, but only by clear, convincing and irrefragable proof. *People ex rel. Jones v. Schmitt; People ex rel. Hood v. Gleason* (1918), 211 Ill. App. 380; *Thomas v. Durchslag* (1950), 404 Ill. 581, 90 N.E.2d 200.

■■ What constitutes clear, convincing and irrefragable proof depends upon the particular circumstances of each case. Since it is the policy of the courts of this State to protect infants from the stigma of illegitimacy, the testimony of each witness who seeks to illegitimatize a child must be carefully scrutinized in the context of the life led by his presumptive father, his mother, and his putative father.

In the instant case, if we had had before us only the testimony of the mother of the child, Elizabeth Ozment, we would be compelled to rule that a mother cannot illegitimatize her child and therefore her testimony alone would not be sufficient to overcome the presumption of legitimacy. (*People ex rel. Gonzalez v. Monroe* (1963), 43 Ill. App. 2d 1, 192 N.E.2d

691.) However, in addition to the testimony of Elizabeth Ozment, we have the testimony of her former husband, John Ozment, and of the putative father of the child, Raymond Heater. Each of them has sworn that John Lee is the child of Raymond Heater.

Conflicting statements were made by Heater, Ozment, and Elizabeth Ozment, prior to the court hearing of January 1977.

During the fall of 1975, in conversation with Davis, Raymond Heater denied paternity of John Lee. He also denied being the father of John Lee in conversation with Lois Norris, a master foster parent. He again denied paternity of the child during visits with the Vances. He did, however, admit to an old friend that he was the natural father of John Lee. In addition to his statements, Heater took John Lee into his home, supplied his mother with certain items which she needed when John Lee was an infant, helped support John Lee and apparently treated John Lee like a son.

John Ozment married Elizabeth knowing she was pregnant. He claimed that he never had sexual relations with her before or during their marriage. He married her merely because she made unspecified promises to induce him into marriage. Ozment testified that he had an operation and the doctor told him that he could never have children. John and Elizabeth denied having sexual relations because, as Elizabeth Ozment claimed, she did not love him before or during their marriage. Ozment signed the consent to adoption at Heater's request because all three of them mistakenly thought John Lee would be taken from them otherwise.

■■ Elizabeth Ozment swore that she did not have sexual relations with John Ozment before or during her marriage to John Ozment. If a husband had no access to his wife during the time of conception, the presumption that the husband is the natural father may be rebutted. *People ex rel. Gonzalez v. Monroe* (1963), 43 Ill. App. 2d 1, 192 N.E.2d 691.

The trial court, as the trier of fact, determines the credibility of the witnesses. This court will not overrule that determination unless it is against the manifest weight of the evidence. Here we have carefully examined the record regarding the motives of John Ozment, Elizabeth Ozment, and Raymond Heater when they spoke of the paternity of John Lee. Giving due consideration to those motives, we believe that the trial court could reasonably believe that Raymond Heater is the natural father of John Lee.

■■ We have carefully examined the record regarding the trial court's decision. When the natural parents of the child have sought custody of that child, Illinois has found the rule that the natural parents of a child have a superior right as against the world to custody of their child, unless

the natural parents are found to be unfit. (*Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208.) We are well aware of the United States Supreme Court decision in *Quilloin v. Walcott* (1978), ___ U.S. ___, 54 L. Ed. 2d 511, 98 S. Ct. 549, which apparently uses a "best interest of the child" standard in determining custody. In that case the natural mother and her husband sought to adopt the child over the objection of the natural father who had a very limited contact with the child. We find that a much different situation exists in the instant case. The natural father of the child, who has lived with the child since shortly after the birth of the child five years earlier, seeks custody of the child who would otherwise be adopted by strangers. The United States Supreme Court found that the requirements of substantive due process and equal protection were met when consideration was given to the contact which Quilloin had with his son as compared to the contact which a married father would be presumed to have with his son. Thus, application of the "best interests of the child" standard in the instant case is permissible, although we believe that finding to be unnecessary since the trial court found that Heater was the natural father of the child and fit to have the custody of John Lee.

■■ The State argues that the trial court found paternity as a means of determining custody. We have examined the record and found that the trial court did attempt to separate the two matters. The holding of one continuous hearing at which the court attempts to determine paternity first and then custody rather than the holding of a bifurcated hearing is permissible.

For the reasons stated above, the judgment of the circuit court of Peoria County is hereby affirmed.

Affirmed.

BARRY, P. J., and STENGEL, J., concur.